## Commonwealth *versus* McHale, Kelley, Feeney and Others, Unknown.
## Commonwealth *versus* McHale and Others, Unknown.
## Commonwealth *versus* McHale.
## Commonwealth *versus* James T. Kelley.
## Commonwealth *versus* John J. Kelly.

1. Offences against the purity and fairness of public elections are crimes at common law and indictable as such.

2. The making of false and fraudulent entries in the book of voters at an election, the depositing of false and fraudulent ballots on a like occasion, and the assuming and undertaking to count the ballots cast at an election, in a false and fraudulent manner, are acts which, if not performed by election officers, are not specified as indictable offences, either by the Act of July 2d 1839, Pamph. L. 519, or any other Act of Assembly. They are nevertheless, offences at common law, and as such indictable, under the terms of the Act of March 31st 1860, sect. 178, Pamph. L. 425.

3. An indictment set forth a conspiracy to commit certain offences against the election laws, some if not all of which were expressly made indictable by the provisions of the Act of July 2d 1839, Pamph. L. 519, and further set forth divers overt acts, constituting the offences above named, alleged to have been performed in pursuance of said conspiracy. *Held,* that the gist of the offence charged lay in the combination, that the overt acts alleged were no part of the offence, but merely evidence of it, and that, therefore there being no provision in said Act of Assembly, making a conspiracy to perform the acts nominated as offences therein indictable, the indictment could not be sustained under the terms of said act. *Held, further,* nevertheless, that said conspiracy, though not particularly nominated as an indictable offence by any other statute, was an offence at common law, and as such indictable under the terms of the Act of March 31st 1860, sect. 178, Pamph. L. 425.

4. Offences against the election laws, not made indictable by the Act of July 2d 1839, Pamph. L. 519, are governed, as regards the limitation of the time within which prosecution may be instituted, by the terms of the Act of March 31st 1860, sect. 77, Pamph. L. 450, whereby it is provided that such prosecutions may be instituted within two years next after the offence has been committed, and not by the terms of the Act of July 2d 1839, sect. 128, Pamph. L. 457, whereby said time is limited to one year.

5. Whether the latter provision is repealed by the former, not decided.

6. The Act of March 12th 1866, sect. 1, Pamph. L. 85, enabling the court to appoint a special district attorney for the conduct of a case, was not avoided by the passage of the new Constitution of 1874, making the district attorney a constitutional officer. The legislature cannot abolish the office, but can control the officer, and if he refuse, or if it be improper for him to act, may afford a remedy.

7. An indictment was brought against certain persons, for alleged offences against the fairness and purity of an election, which were said to have

[Commonwealth *v.* McHale et al.]

resulted in the election of the district attorney in office when the indictments were drawn. Said district attorney disagreeing with the private counsel for the prosecutor, as to the method of proceeding, refused to sign the indictments. The court being informed of these facts, by the prosecutor's counsel, appointed the latter special district attorney to conduct the case, under the provisions of the Act of March 12th 1866, sect. 1, Pamph. L. 85. *Held,* that said course of action was legal and proper, and that indictments signed by said private counsel, as special district attorney, and by him presented to the grand jury, were valid and sufficient to support a conviction.

March 14th 1881.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Quarter Sessions, of *Schuylkill county :* Of January Term 1880, Nos. 296, 297, 298, 299 and 300.

These five cases were argued together. The record showed the following proceedings in each case :

On October 28th 1879, W. John Whitehouse made informations before a justice of the peace against the above-named defendants, charging them with the offences hereinafter particularly specified. All the defendants waived a hearing except McHale, to whom the justice gave a hearing, and on Monday November 3d 1879, bound him over to appear at court. The justice immediately returned the cases to the district attorney.

On the same day, November 3d 1879, W. John Whitehouse presented to the court his petition, under the Act of March 12th 1866, Purd. Dig. 491, Pamph. L. 85, setting forth that "a difference of opinion as to the proper manner of proceeding has occurred between A. W. Schalck, Esq., district attorney, and the private counsel employed by the prosecutor, in that the district attorney has refused to sign and send before the grand jury the bills of indictment prepared by the private counsel, which said counsel and this prosecutor believe to state correctly the facts so far as the same have come to their knowledge ; that the alleged frauds charged in said indictment were perpetrated in the interest of said district attorney, and the bills of indictment so charge ; that the district attorney alleges that the bills of indictment do not correctly state the facts concerning which the prosecutions were brought ;" and praying the court to direct the private counsel, Guy E. Farquhar, Esq., employed by the prosecutor, to conduct the entire proceedings, and if necessary to verify the indictments by his own signature.

The court having given the district attorney an opportunity to sign the bills, during the session of the court, on his failure to do so, or to present other indictments, on the same day granted the prayer of the petition and appointed Guy E. Farquhar, Esq., special district attorney to prosecute the cases.

Mr. Farquhar having been sworn in, signed and presented the indictments to the grand jury, then in session, which body found a true bill in each case.

[Commonwealth *v.* McHale.]

The several cases were as follows:—

I. and II. Two CONSPIRACY CASES, January Term 1880, Nos. 296, 297.

Two indictments for *conspiracy* were found, the one against Anthony McHale, James T. Kelley, Martin Feeney and others unknown, and the other against Anthony McHale and others unknown. They were, excepting as to the names of the defendants, precisely similar. They charged in the first count, in substance, that on November 5th 1877, the defendants, intending to prevent a free election at the South Cass poll, and intending to procure a false return, did *conspire*, by means of procuring unqualified persons to offer to vote, and procuring the election officers to accept such votes, and by means of false entries in the books kept by the election clerks of names of persons purporting to have voted, and by means of false ballots and false count, and other corrupt means, fraudulently to procure a return from the election officers to the prothonotary, which would show falsely a greater number of votes for A. W. Schalck for district attorney than a true and correct return would have shown, and to cause the said false number of votes to be computed in the general count of votes cast for said office. It is then alleged, as *overt acts*, that in pursuance of said conspiracy the defendants did, on November 6th 1877 (election day) procure many unqualified persons (naming them) to offer to vote, and did procure the election officers to receive such votes, and did cause the names of many persons (naming them) to be falsely added to the books of the election officers, known as the "lists of voters," as if they had voted, when, in fact, they had not, and did cause false ballots to be substituted and counted instead of the true ballots—the false ballots containing the name of said Schalck for district attorney—and did falsely deposit in the boxes a large number of ballots not polled by voters, all containing the name of A. W. Schalck, and did fraudulently make a false count of the ballots, and did cause a false return of the votes cast, which return they caused to be transmitted to the prothonotary as the return of votes cast at such election.

The second count was identical with the first, excepting that it did not state specifically the means intended to be used by the conspirators, stating them only as "divers tricks and devices, and other illegal and corrupt means."

The third count was identical with the second, excepting that it stated the *intention* of the conspirators to be to procure a *false return* (omitting the charge as to preventing a free election), and that it omitted, in the averment of *overt acts*, any charge as to procuring unqualified persons to vote, and the reception of such illegal votes by the election officers.

The fourth count was identical with the third, excepting that it

omitted all averment of *overt acts*, simply charging that the defendants, intending to *procure* a false count and return of the votes cast at said election, conspired by means of divers tricks, &c., to procure a return from the election officers to the prothonotary as the return of the said election, which return would show falsely a greater number of votes for A. W. Schalck than would have been returned according to the true count, and to cause said false number of votes so returned, to be computed for said Schalck in the general count.

The fifth count charged that the defendants, intending to procure a false computation in the general count and computation of the votes cast for said office, conspired by means of divers tricks, &c., to cause a false number of votes to be computed for A. W. Schalck for said office, greater than would have been computed according to the true vote cast.

III. Case *v.* McHale, for fraud at election, January Term 1880, No. 298.

The indictment charged that McHale (alone), intending to procure a false count and return, did, on November 6th 1877, make false entries in books kept by election clerks, known as lists of voters, of names of divers persons (naming them), purporting thereby that said persons had voted at said election when, in fact, they had not voted, and, in a *second count*, that McHale, with like intent, did fraudulently deposit among the ballots deposited by the voters cast at said election by the electors voting thereat, false ballots to a large number, with the intent that such false ballots should be counted and returned by the election officers with the same effect as though they had been legally cast.

IV. Case *v.* James T. Kelley, for fraud at election, January Term 1880, No. 299.

Defendant was charged in this indictment, that on November 6th 1877, at an election held on that day at South Cass poll, intending to procure a false count and return of the votes cast by the electors voting, he did fraudulently deposit among the ballots deposited by the persons voting, false ballots to a large number, with the intent that they should be counted and returned by the election officers with the same effect as though they had been legally cast.

V. Case *v.* John J. Kelly, for fraud at election, January Term 1880, No. 300.

This indictment was against one of the election officers (neither McHale nor James T. Kelley was an election officer) and charged that on November 6th 1877, at a general election held at South Cass poll, intending to procure a false count and return of votes at such election, he did make false entries in the books kept by the

[Commonwealth *v.* McHale.]

clerks at said election, known as "lists of voters," of the names of a large number of persons (naming them), purporting thereby that they had voted at said election, when in fact they had not so voted.

The defendants in each case moved to quash the indictments, to wit:

CONSPIRACY CASES, Nos. 296, 297.

To these indictments, the reasons alleged for quashing were:

1. That the bills were not signed by the district attorney, nor any person authorized by law to sign the same in his stead.

2. That the bills were found more than *one year* from the commission of the offence, within which period they should have been found and not afterwards.

3. That each count contained a joinder of offences.

4. That the bills charged an *executed* conspiracy and several substantive offences perpetrated in pursuance thereof, punishable by law.

5. That the overt acts charged, if done by an individual, would not be criminal, and that no facts are alleged making the commission by combination thereof criminal.

6. That the bills were not found upon any return made to the district attorney, but were prepared prior to the preliminary hearing and return, by a private and unofficial citizen not authorized to act in place of the district attorney, and that the indictments contained a charge for which defendants were not held to answer.

McHALE CASE, for fraud at election, No. 298.
The reasons alleged were the same as Nos. 1, 2 and 6 preceding.

CASE *v.* JAMES T. KELLEY, No. 299.
The reasons were the same as Nos. 1, 2, 4 and 6 preceding.

CASE *v.* JOHN J. KELLY, No. 300.
The reasons were the same as Nos. 1, 2, 4 and 6 preceding.

In addition to the facts appearing by the record in these cases, as above set forth, the following facts were referred to upon the hearing of the motions to quash, and were contained in the history of the case in the paper book of plaintiff in error. At the general election, held November 6th 1877, Adolph W. Schalck and W. John Whitehouse were rival candidates for the office of district attorney of Schuylkill county. A. W. Schalck received the certificate of election and took the oath of office. Shortly after the said election, W. J. Whitehouse filed his petition contesting the validity of Mr. Schalck's election. The matter was referred to an examiner (Mason Weidman, Esq.), before whom nearly two years were occupied in the taking of over 9000 pages of testimony, the gist of which was to the following effect:

1 OUTERBRIDGE—26

[Commonwealth *v.* McHale.]

On the day of said election, McHale and James T. Kelley (neither being officers of election), after the poll closed, prepared a quantity of false tickets, numbering them consecutively, and that they subsequently introduced them into the ballot box. These tickets each contained the name of Adolph W. Schalck for district attorney, and doubtless also the names of the other candidates upon the same county ticket (Democratic). To have the records of the election correspond with the false tickets so introduced into the ballot box, McHale caused John J. Kelly, one of the clerks of election, to add a number of names to the "list of voters" kept by the two clerks during the election. To still further cover his fraud he caused himself to be called in by Martin Feeney, the election judge, to count the ballots, upon pretence that the officers were "green" and he an old hand at such matters. Instead of counting each ballot, however, he lumped them and counted as he pleased to make the result tally with his false tickets, and, as was alleged by the contestants, to correspond with some ulterior purpose, *i. e.*, the object of the alleged conspiracy.

The examiner, in his report, filed October 13th 1879, recommended that the parties implicated be prosecuted criminally for their acts. There was no suggestion of fraud or improper acts on the part of Mr. Schalck. No immediate action was taken, however, by the court or the district attorney, towards a public prosecution, and as two years had nearly expired since the election (the time believed by the contestant to be the period of limitation fixed by law), Mr. Whitehouse, on October 28th 1879, made his private information against the defendants, as hereinbefore stated.

After argument of the motions to quash, the court, on February 23d 1880, entered an order in each of the cases, "Indictment quashed." Pershing, P. J., delivered an oral opinion, which was subsequently reduced to writing and filed, the material part of which was as follows:

"The Act of July 2d 1839, constitutes the election code of the state. All subsequent statutes on the subject, including the Act of 1874, were passed as supplements. The proviso to the 128th section of the Act of 1839 (Purd. Dig. 368, pl. 281), limits all suits and prosecutions for the violation of any of its provisions to within one year next after the cause thereof shall accrue, unless therein otherwise provided. If this is still the law on this subject, then plainly the statute is a bar to these prosecutions. A reason why such prosecutions should be instituted, within the time mentioned, may be found in the fact that the boxes are needed at the following election, at which time the law requires them to be emptied, and the tickets and papers burned. Thus, what might be most important evidence to bring about a conviction or to establish a defence is obliterated.

[Commonwealth v. McHale.]

"It is contended on the part of the Commonwealth that the limitation of one year contained in the Act of 1839, is repealed by the 77th section of the Criminal Procedure Act of 31st March 1860, Purd. Dig. 395, pl. 82, which provides that all indictments for all misdemeanors, perjury excepted, shall be brought or exhibited within two years after such misdemeanors shall have been committed.

"It is to be observed that the Penal Code of 1860 does not include in its provisions any offences against the election laws. Legislation upon the subject of regulating elections and punishing frauds committed by the officers conducting them, or others, was left unchanged by the Act of 1860. Does the general language of the Penal Code, limiting the prosecution by indictment of all misdemeanors to two years, repeal the provision of the Election Code requiring offences against it to be prosecuted 'within one year?' We think not."

[The court here discussed the principle that a general act is not to be construed to repeal a previous particular act, unless there is some express reference to the previous legislation on the subject, or unless there is a necessary inconsistency in the two acts standing together.]

"We see no difficulty in the way of applying these rules of construction to the case in hand. The Act of 1860 does not expressly repeal the limitation contained in the Act of 1839, nor does any supplement to the latter act contain any such repeal.

"Our conclusion has been influenced by another consideration. The several offences for which these defendants are indicted are not designated as misdemeanors in the Act of 1839. Giving, therefore, the Act of 1860 full sweep, where it declares that all misdemeanors may be prosecuted within two years, can we say that this applies to an offence which the statute does not call a misdemeanor, and which is to be proceeded against 'within one year?' It seems to be a peculiarity of the Election Code of 1839, that it provides for the indictment and punishment not only of election officers, but of 'any person' offending against it, without classifying the crime as a felony or misdemeanor, except in one or two instances not involved in these prosecutions. This could not have been merely accidental, and has some weight in our examination of this matter. (See as to the exceptions, sects. 111, 113, Act 1839, as given in Dunlop's Dig. 780). As having a bearing on the effect to which the Act of 1839 is entitled since the adoption of the new Constitution and the passage of the Act of May 19th 1874 (Contested Elections, Pamph. L. 208), we may refer to In re Contested Election of Barber, 5 Norris 392; (see particularly p. 400).

"If these defendants are guilty, which we do not assume, it is much to be regretted that very nearly two years were allowed to

[Commonwealth *v.* McHale.]

pass by before the law was called into action, especially as all the facts connected with this election in Cass township were known shortly after the election was held. Regarding alone our duty to administer the law, we are unanimously of the opinion that the indictments in these cases must be quashed."

The Commonwealth in each case took a writ of error, assigning for error the action of the court in sustaining the motions to quash, and the order quashing the indictments.

*Guy E. Farquhar,* special District Attorney, and *C. W. Wells* (*F. W. Hughes* with them), for the Commonwealth, plaintiff in error.

*Lin Bartholomew* (with him *John A. Nash, James B. Reilly* and *John W. Ryon*), for the defendants in error.—There are two substantial reasons why the indictments were properly quashed. (1.) The appointment of the special district attorney by the court was unauthorized. The regular district attorney did not refuse to prosecute, and it was not. so alleged in the petition. He is not required to sign all bills prepared by private parties. The reason assigned in the petition was insufficient under the Act of 1866. The district attorney, under the new Constitution, is a constitutional officer, required .by law to sign all indictments; he cannot arbitrarily be deprived of his functions by the courts. The Act of March 12th 1866, is, we contend, repealed by the new Constitution. (2.) These indictments are clearly for offences provided for by the Act of 1839, and are barred by the limitation of one year contained in that act. Offences against the election laws are unknown to the common law. They are purely of statutory origin, and such statutes must receive strict construction. Even were the offence charged a common-law offence, the Act of 1806 has superseded common-law remedies wherever a statutory remedy is given, and that act cannot be evaded by calling the offence a *conspiracy* at common law, to do what is prohibited by the Act of 1839.

Mr. Justice PAXSON delivered the opinions of the court, May 2d 1881.

COMMONWEALTH *v.* McHALE, JAMES T. KELLEY, FEENEY AND OTHERS UNKNOWN.

SAME *v.* ANTHONY McHALE AND OTHERS UNKNOWN.

The single assignment of error in each of the above cases is that the court below quashed the bill of indictment. As the cases are substantially identical they may be considered together.

The indictments were quashed upon the ground that the offences charged therein were barred by the Statute of Limitations. They were found by the grand jury on November 3d 1879. The time

[Commonwealth *v.* McHale.]

laid as the commission of the offence was November 5th 1877. This lacks two days of the limitation of two years prescribed for the prosecution for misdemeanors by the 77th section of the Criminal Procedure Act of 1860. The court below held, however, that the latter act did not apply, for the reason that the prosecutions were under the Act of 2d July 1839, Pamph. L. 519, entitled, " An act relating to the elections of this Commonwealth," the 128th section of which provides that all prosecutions under said act shall be instituted " within one year next after the cause thereof shall accrue, unless otherwise herein provided." We need not discuss the question whether the limitation contained in this section is repealed by the subsequent Act of 1860, before referred to. We decide the case upon other grounds.

The Act of 1839, with its various supplements, constitutes the Election Code of this state. It defines a large number of offences connected with the holding of elections. The greater portion of them are offences by election officers, though illegal voting and certain acts of unlawful interference with elections and election officers are also prescribed and punished.

The case of the defendants, however, does not come within the Act of 1839, and consequently not within its limitation. The indictments charge them with a conspiracy to do the things, or at least some of the things prohibited by said act. The object of the conspiracy, as set forth in the first count of the indictment, was " to procure a false, fraudulent and untrue count and return of the votes so cast by the said electors," &c. The count then sets forth divers overt acts, some of which, if committed by the parties, would render them amenable to the penalties of the Act of 1839. The second and third counts charge a conspiracy of a like object and similar character, followed by other overt acts committed in furtherance of said conspiracies. The fourth and fifth counts set out the conspiracy but omit the overt acts, being what is known in criminal pleading as the common counts.

It was urged that inasmuch as the particular offences averred as constituting the overt acts were barred by the statute when the indictments were found, the court below was right in quashing the bills. This does not follow. The error into which the learned judge fell was in losing sight of the precise nature of the offence charged, and in supposing the indictment was under the Act of 1839. The indictments were for a conspiracy—a common-law offence—and with which the Act of 1839 has nothing whatever to do. The gist of this offence is the combination—the unlawful agreement to do the particular thing. And the offence is complete, as all the authorities agree, the moment the combination is formed. The overt acts are no part of the crime charged; they are merely the evidence of it; the means by which the Commonwealth is enabled to prove the conspiracy itself. The object of

setting them forth in the indictment is to furnish notice to the defendants of the particular acts the Commonwealth relies upon as evidence of their having acted in concert. In this respect they supply the place of a bill of particulars. The fact of the combination is almost always inferred by the jury from the acts, the overt acts of the parties, as direct evidence in the shape of declarations can seldom be shown. When established, a conspiracy has always been regarded as a serious offence. It is the combination that makes it so. There are many things that one man may do that two or more may not combine to do. In the recent case of Commonwealth *v.* Bartilson, 4 Norris 487, we had occasion to review this branch of the law of conspiracy with some care, and need not repeat what was there said.

The fourth and fifth counts, as before stated, set forth no overt acts, and there is nothing to connect them even by implication with the Act of 1839.

It is manifest, from what has been said, that as the indictments charge a common-law conspiracy, they are within the limitation of the Act of 1860, and are not barred until after two years.

It was urged, however, that the indictments were properly quashed because not signed by the district attorney. They were signed by Guy E. Farquhar, Esq., who was specially appointed by the court to try these cases, under the Act of 12th March 1866, Pamph. L. 85. The appointment appears to have been regularly made in accordance with the provisions of said act, and was eminently proper, as the district attorney was a candidate at the general election at which the alleged frauds were committed, and which frauds, it is stated, increased his vote. It would therefore have been a breach of professional and official propriety for him to have acted as district attorney in these cases. But it is said the appointment was illegal because the Constitution adopted since the act of 1866 was passed, makes the district attorney a constitutional officer, and as such he cannot be stripped of his powers by the legislature. There is little force in this suggestion. While the legislature may not abolish the office, it can control the officer. They can regulate the performance of his duties, and punish him for misconduct, as in the case of other officers. And where he neglects or refuses to act, or where, from the circumstances of a given case, it is improper and indelicate for him to act, it is competent for the legislature to afford a remedy. This is all that the Act of 1866 does, and we think its provisions are not obnoxious to any constitutional provision.

The order quashing the indictment is reversed in each case, and a *procedendo* awarded.

[Commonwealth v. McHale.]

COMMONWEALTH v. ANTHONY McHALE.
SAME v. JAMES T. KELLEY.
SAME v. JOHN J. KELLY.

PAXSON, J.—The court below quashed the indictment in each of the above cases, upon the ground that the offences charged were barred by the Statute of Limitations. If, as was assumed by the learned judge, the indictments are under the Act of July 2d 1839, and its supplements, and the limitation of one year contained in said act is not enlarged by the 77th section of the Criminal Procedure Act of 31st March 1860, his conclusion is not inaccurate. A careful comparison of the several indictments with the Act of 1839 and its supplements leads us to the conclusion that they are not laid under it, and hence do not come within its limitation. One of them, Com. v. John J. Kelly, No. 300, Jan. T. 1880, may have been intended to come within the provisions of section 106 of said act, but the indictment does not charge the precise offence defined in said section, although it does one of a similar nature. Nor are we able to find any other Act of Assembly which will sustain these indictments. If, however, the acts charged are offences at common law they would not come within the limitation claimed for the Act of 1839. The 178th section of the Crimes Act of 31st March 1860, Pamph. L. 425, provides that "every felony, misdemeanor or offence whatever, not specially provided for in this act, may and shall be punished as heretofore." This is a saving section, leaving every crime not specially provided for in this act punishable as heretofore: Report on Penal Code 37. Under it an indictment will lie against a woman as a common scold: Com. v. Mohn, 2 P. F. Smith 243.

The indictment against Anthony McHale contains three counts. In the first count it is charged that "intending to procure a false count and return of the votes cast by the electors," &c., he did "make false and fraudulent entries in the books kept by the clerks at said election in said election district, which books are commonly known as the list of voters, of the names of divers persons, to wit, twenty-one persons whose names are as follows," &c. The second count charges that, with like intent, he did "deposit among the ballots cast at said election in said election district by the electors voting thereat, false and fraudulent ballots of a large number, to wit, twenty-one ballots," &c. The third count charges that with like intent he did, "with the connivance of the election officers holding said election, undertake and assume to count the ballots cast by the electors voting at said election in said election district, and did falsely, fraudulently, maliciously and unlawfully make a false and fraudulent count of said ballots as to make it appear that two hundred and eleven votes were deposited for one Adolph W.

[Commonwealth *v.* McHale.]

Schalck for the office of district attorney, when in truth and in fact he did not receive more than one hundred and eighty-five votes," &c.

The indictment against James T. Kelley charges that with a similar intent to procure a false count, he did " deposit among the ballots cast at said election, in said election district, by the electors voting thereat, false and fraudulent ballots of a large number, to wit: twenty-one ballots," &c.

The indictment against John J. Kelly charges substantially the same offence as is set out in the first count of the indictment against McHale.

Some of these offences, perhaps all of them, are indictable under the Act of 1839, and its supplements, when committed by election officers. The defendants were not election officers; at least, they were not indicted as such.

It must be conceded that offences which strike at the purity and fairness of elections are of a grave character. Are they indictable at the common law? This is a serious and at the same time comparatively new question. In considering it, we have little in the way of authority to guide us.

It was assumed by the learned counsel for the defendants that an indictment will not lie at common law for such acts. In their printed argument they dismiss the subject with this brief remark: " Offences against the election laws are unknown to the common law; they are purely and exclusively of statutory origin." It may safely be admitted that if the question depends upon the fact whether a precise definition of this offence can be found in the text books, or perhaps in the adjudged English cases, the law is with the defendants. This, however, would be a narrow view, and we must look beyond the cases and examine the principles upon which common-law offences rest. It is not so much a question whether such offences have been so punished as whether they might have been.

What is a common-law offence?

The highest authority upon this point is Blackstone. In chap. 13, of vol. 4, of Sharswood's edition, it is thus defined: " The last species of offences which especially affect the Commonwealth are those against the public police or economy. By the public police and economy I mean the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations. This head of offences must therefore be very miscellaneous, as it *comprises all such crimes as especially affect public society*, and are not comprehended under any of the four preceding series. These amount some of them to felony, and others to mis-

[Commonwealth v. McHale.]

demeanors only." The learned author then proceeds to define
certain offences of both classes which are among the crimes against
the public police or economy. The felonies I will omit. The mis-
demeanors are: 1. Common or public nuisances, of which a large
variety are given, commencing with obstructions to public highways
and ending with common scolds. 2. Idleness. 3. Sumptuary
laws. 4. Gaming. 5. Destroying game. These, as the text
shows, are but illustrations. A large number of these and other
common-law offences are now, and have for many years been regu-
lated by statute in England. But in most instances the statute is
merely declaratory of the common law, the object being to define
the crime with greater accuracy or to increase the punishment.

The above quotation from Blackstone is in harmony with other
text writers. Bishop in his work on Criminal Law, vol. i., sects.
358 and 368 (1st ed.) says: " The government requires its subjects
to do more than simply abstain from attempting its overthrow. It
requires them to give, when called upon, their active assistance to
it. and at all times to refrain from casting obstructions in the way
of its several departments and functions. Therefore every viola-
tion of these duties, being sufficient in magnitude for the law to
regard, is criminal. * * * We see it to be of the highest import-
ance that persons be elected to carry on the government in its
various departments, and that in every case a suitable choice be
made. Therefore any act tending to defeat these objects, as forci-
bly or unlawfully preventing an election being held, bribing or cor-
ruptly influencing an elector, casting more than one vote, is pun-
ishable under the criminal common law." Mr. Wharton in his work
on Criminal Law, vol. i. sect. 6 (6th ed), places the giving of more
than one vote at an election as among the misdemeanors at common
law. The Supreme Judicial Court of Massachusetts in two cases
has recognised the same doctrine. The first was Commonwealth v.
Silsbee, 9 Mass. 417, which was an indictment charging that the
defendant did "wilfully, fraudulently, knowingly and designedly
give in more than one vote for the choice of selectmen of the said
town of Salem at one time of balloting, &c." After conviction the
defendant moved in arrest of judgment that there was no statute
covering the offence. It was said by the court: " There cannot
be a doubt that the offence described in the indictment is a mis-
demeanor at common law. It is a general principle that where a
statute gives a privilege, and one wilfully violates such privilege,
the common law will punish such violation. In town meetings
every qualified voter has equal rights, and is entitled to give one
vote for every officer to be elected. The person who gives more
infringes and violates the rights of other voters, and for this offence
the common law gives the indictment." The other case is Com-
monwealth v. Hoxey, 16 Mass. 385. The defendant was charged
with disturbing a town meeting assembled to make choice of town

[Commonwealth *v.* McHale.]

officers for the political year then ensuing, and that the said defendant, "intending as much as in him lay to prevent the choice of said selectmen according to the will of the electors and to interrupt the freedom of election, unlawfully and disorderly did openly declare that the old selectmen should not be chosen, and attempted repeatedly to take from the box, which contained the ballots of the electors, the votes of the electors," &c. The defendant pleaded guilty to the indictment, and moved in arrest of judgment; "because the said indictment purports to be founded upon a statute law of the Commonwealth; whereas there is no such statute in the state making the facts set forth in the indictment an offence against the Commonwealth; and because the facts set forth in the indictment do not amount to an offence at common law." The court, after admitting there was no statute to meet the case, proceeded to say: "The remaining question is, do the facts charged amount to an offence at common law? On this question we entertain no doubts. Here was a violent and rude disturbance of the citizens, lawfully assembled in town meeting, and in the actual exercise of their municipal rights and duties. The tendency of the defendant's conduct was to a breach of the peace, and to the prevention of elections necessary to the orderly government of the town, and due management of its concerns for the year. It is true that the common law knows nothing perfectly agreeing with our municipal assemblies. But other meetings are well known and often held in England, the disturbance of which is punishable at common law as a misdemeanor. In this Commonwealth town meetings are recognised in our Constitution and laws; and the elections made and business transacted by the citizens at those meetings lie at the foundation of our whole civil polity. If then there were no statute prohibiting disorderly conduct at such meetings, an indictment for such conduct might be supported." While the court put this case partly upon the ground that the defendant's conduct tended to a breach of the peace, it is evident the principal reason was the interference with the rights of the electors, which as the learned judge truly said "lie at the foundation of our civil polity," and it may be safely asserted that every fraud upon the ballot tends directly to a breach of the public peace if not to revolution and civil war.

We are of opinion that all such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in the books, but whether they injuriously affect the public police and economy.

It needs no argument to show that the acts charged in these indictments are of this character. They are not only offences which affect public society, but they affect it in the gravest manner. An offence against the freedom and purity of elections is a crime against the nation. It strikes at the foundations of republican institutions. Its tendency is to prevent the expression of the

[Commonwealth *v.* McHale.]

will of the people in the choice of rulers, and to weaken the public confidence in elections. When this confidence is once destroyed the end of popular government is not distant. Surely, if a woman's tongue can so far affect the good of society as to demand her punishment as a common scold, an offence which involves the right of a free people to choose their own rulers in the manner pointed out by law is not beneath the dignity of the common law, nor beneath its power to punish. The one is an annoyance to a small portion of the body politic; the other shakes the social fabric to its foundations.

We are of opinion that the offences charged in these indictments are crimes at common law. We regard the principle thus announced as not only sound but salutary. The ingenuity of politicians is such that offences against the purity of elections are constantly liable to occur which are not specifically covered by statute. It would be a reproach to the law were it powerless to punish them.

It follows from what has been said that it was error to quash the indictments.

> The judgment is reversed in each case, and a *procedendo* awarded.