## Commonwealth *v.* Sylvanus, Appellant.

*Criminal law—Elections—False computation of votes and false return of election—Evidence—Sufficiency.*

Where, before the closing of the polls, the judge, inspectors of election and clerks all join in stuffing the ballot box and adding to the list of voters, the names of electors who had not voted, they are

conducting themselves in a manner entirely outside of the duties imposed by the law upon the several officers respectively, and they can all be jointly indicted at common law for wilful fraud in the conduct of an election.

In such case, they are engaged in a proceeding in which all are required to join. If all corruptly join in making a false count they are answerable and may be jointly indicted. It is true that some may cheat the others, but that is a matter dependent upon the evidence. When, in view of the provisions in the statutes to guard against such a result, the election officers all join in an alleged count of the votes and a return based thereon showing a number of votes far in excess of the number of ballots in the box, as was alleged in the testimony produced by the Commonwealth, there must have been a joint action by the persons charged with the duty of making an honest count and a true return, and they may be jointly indicted.

Where the defendants were duly organized as an election board for the district in question, each of them having taken the oath required by the statutes, and the duly qualified voters had deposited their ballots in the manner required by law, and, after the polls were closed and the ballot boxes were opened, a return was made setting forth that 442 votes had been cast for the several candidates for city treasurer, while the ballot box contained only 323 used ballots, and the return was made in the names of the defendants, the evidence warranted the finding that the defendants had made the count and return and a vedict of guilty will be sustained.

*Charge of court—Instructions to jury—Reasonable doubt—Characterization as "bugbear."*

A charge of the court referring to the doctrine of reasonable doubt as a "bugbear," inherited of ancient jurisprudence is not a proper characterization of the principle, and would naturally lead the jury to treat it with less respect than that to which, under the law, it is entitled. The rule as to a reasonable doubt may sometimes lead to the acquittal of a rogue, but it is a safeguard of the life and liberty of honest men. It is proper for the court to caution the jury against making the rule an excuse for the acquittal of a defendant, in the absence of any reasonable doubt as to his guilt, against conjuring up a doubt where none exists, but that is entirely different from instructing them that the rule itself is a "bugbear," an apparition without substance, and such instructions constitute reversible error.

Argued April 18, 1921.  Appeal, No. 25, March T., 1920, by Joseph Sylvanus from Judgment of Q. S. Lu-

412    COMMONWEALTH *v.* SYLVANUS, Appellant.

zerne County, June Sessions, 1920, No. 123 B, on verdict of guilty in the case of Commonwealth of Pennsylvania v. John Mollahan, Patrick Callahan, Thomas Sliney, Joseph Sylvanus and James Brennan. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Indictment for wilful fraud in the conduct of an election—indictment founded on section 102 of Act of July 2, 1839, P. L. 541. Before FULLER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were the refusal to quash the indictment, the charge of the court and refusal to direct a verdict for the defendant.

*William L. Pace,* and with him *M. F. McDonald, Richard B. Sheridan* and *John V. Kosek,* for appellant.—It was error to join all of the defendants in the same indictment and the indictment should have been quashed: Com. v. Miller et al., 2 Parsons 480; Rex v. Philips et al., 2 Strange 92; United States v. Davis et al., 33 Fed. Rep. 621; Com. v. Degan, 50 Pa. Superior Ct. 357; Com. v. Boyle et al., 14 C. C. Rep. 562; Com. v. Ziert et al., 4 C. C. Rep. 394; Com. v. Kurz et al., 14 Pa. Dist. Rep. 741; Com. v. Weiserth, 47 Pa. Superior Ct. 598.

The charge of the court was prejudicial and misleading and the instructions as to reasonable doubt alone constituted reversible error: Lee v. Williams, 30 Pa. Superior Ct. 356; U. S. v. Foster et al., 6 Fed. Rep. 255; Com. v. Deitrick, 221 Pa. 13; Com. v. Gerade, 145 Pa. 289; Com. v. Ross, 266 Pa. 584; Com. v. Devine, 18 Pa. Superior Ct. 431; Shipp v. Schmitt and Murphy, 71 Pa. Superior Ct. 496.

*Arthur H. James,* District Attorney, and with him *Evan C. Jones,* Assistant District Attorney, for appellee.

OPINION BY PORTER, J., October 7, 1921:

This appellant was duly appointed, qualified and served as one of the clerks in the fifth election district of the thirteenth ward of the City of Wilkes-Barre, at the election held on November 4, 1919. He was subsequently charged, jointly with the judge, inspectors and the other clerk, who served at said election, in an indictment which contained two counts, the first charging that the defendants did willfully and fraudulently make a false and corrupt count and computation of the votes cast at said election in said district for candidates for the office of city treasurer, of the City of Wilkes-Barre, and the second count charging that they did willfully and fraudulently make a false return of the votes cast at said election. The defendants were jointly tried and all found guilty and sentenced, from which conviction Joseph Sylvanus appeals.

This appellant moved to quash the indictment, upon the alleged ground that the judge, inspectors and clerks at an election cannot be jointly indicted for the offenses charged in this indictment. He subsequently moved in arrest of judgment upon the same ground. We thus have presented the first question which the learned counsel for the appellant alleged to be involved in this case, viz: "Can the judge, inspectors and clerks of election be joined in one indictment charging willful fraud in making a false and corrupt count and computation of votes cast, and in making a false return of the votes cast?" The Act of July 2, 1839, P. L. 541, is the foundation upon which has been erected our legislation regulating elections. That statute provided for the election of a judge and two inspectors of election, in each election district, and in its 14th section enacted that elections should be held and conducted by the inspectors and judges elected under its provisions, "and by clerks appointed as

hereinafter provided," and, in section 15 imposed on each inspector the duty to "appoint one clerk, who shall be a qualified voter of such district." The 17th section seems to clearly disclose a legislative intention that when an inspector had appointed a duly qualified clerk, who entered upon the discharge of his duties, it was not in the power of the inspector to remove him unless for neglect to attend at an election. The statute required the clerks, as well as judges and inspectors, to take and subscribe an oath or affirmation before entering upon the discharge of their respective duties, and made it the duty of the clerks to truly write down the name of each elector who shall vote and truly write down the number of votes given for each candidate, as often as his name shall be read by the inspectors. The 72d section, providing for the manner of the count of votes, required the ballot box to be opened, and the inspectors, in the presence of the judge, shall deliberately take out such tickets and shall each read aloud the name or names written or printed thereon, and the clerks shall each carefully enter, as read, each ticket as it is taken from the box, and keep account of the same on papers provided for the purpose. Many of the provisions of the Act of 1839 have been modified by more recent legislation, but the importance of the functions to be discharged by the clerks have been in no respect diminished. The 102d section of the Act of 1839 enacted: "If any inspector, judge or clerk, as aforesaid, shall be convicted of any willful fraud in the discharge of his duties, as aforesaid, he shall undergo an imprisonment for any term not less than three, nor more than twelve months, and be fined in any sum not less than one hundred dollars, nor more than five hundred dollars"; and be disqualified for seven years from holding any office and from giving his vote at any general or special election. This section is still in force and upon it the present indictment is founded.

The present Constitution of the Commonwealth, article VIII, section 14, requires that: "District election

boards shall consist of a judge and two inspectors, who shall be chosen annually by the citizens. Each elector shall have the right to vote for the judge and one inspector, and each inspector shall appoint one clerk." This provision does not merely vest the inspector with discretion, it imposes a positive duty to appoint one clerk. Section 16 of the same article of the Constitution empowers the courts of common pleas to appoint overseers of election to supervise the proceedings of election officers and to make report to the court as may be required. The duties of the judge, inspectors and clerks of elections are by no means identical through the entire progress of the election, passing upon the qualifications of electors, receiving their ballots, enforcing the regulations as to the number of persons permitted within the guard rail and other details which it is unnecessary to mention. The clerks are without authority to pass upon the qualifications of a voter, and could not be jointly indicted with either the judge or the inspectors for unlawfully receiving or rejecting a vote. The duty of the judge to pass upon the qualifications of electors only arises when there is a disagreement between the inspectors, and an indictment charging the judge and two inspectors jointly for fraudulently receiving or rejecting a vote does not lie. If, however, before the polls are closed the judge, inspectors and clerks all join in stuffing the ballot box and adding to the lists of voters the names of electors who had not voted, that is something entirely outside of the duties imposed upon the several officers, respectively, and they would all be jointly indictable, at common law: Com. v. McHale, 97 Pa. 397.

The Act of January 30, 1874, P. L. 31, which wrought the changes in the preëxisting election laws necessary to carry into effect the requirements of the new constitution, changed many of the details of procedure. The manner in which the return shall be made by the officers of election and what shall be done with the return after it is so made is regulated by the 13th section of that

statute, the provisions of which now material were in no respect changed by the amendment of April 28, 1899, P. L. 127. "As soon as the polls shall close, the officers of election shall proceed to count all the votes cast for each candidate voted for, and make a full return of the same in triplicate, with a return sheet in addition, in all of which the votes received by each candidate shall be given after his or her name, first in words and again in figures, and shall be signed by all of said officers and certified by overseers, if any, or if not so certified, the overseers and any officer refusing to sign or certify, or either of them, shall write upon each of the returns his or their reasons for not signing or certifying them. The vote, as soon as counted, shall also be publicly and fully declared from the window to the citizens present." These things are the essential features of making the return. The return, after it is thus made in triplicate, is disposed of by giving one to the minority inspector, one to the judge, and placing the other in the ballot box. The duty of delivering the return to the prothonotary of the court of common pleas is imposed upon the judge. It will be observed that this statute leaves the requirements as to the manner of making the count precisely as they were under the Act of 1839. In many places in the Act of 1874, particularly in sections 3 and 13, the term "officers of election" is used in such a manner as to clearly disclose a legislative intent that the terms should include clerks and overseers. There can be no doubt that it was the legislative intention that all the officers, judge, inspectors, clerks and overseers shall join in making the return.

The manner of making the count is now regulated by the Act of June 10, 1893, P. L. 419, as amended by the Act of April 29, 1903, P. L. 338, section 28: "After the polls are closed, the election officers only shall remain in the voting room within the guard rail, and shall there at once proceed to count the votes. Such counting shall not be adjourned or postponed until it shall have been fully completed. A record shall first be made of the number

of the last ballot cast; the officers in charge of the voting check-list shall, in the presence of the other officers and watchers, count in a distinct and audible voice the names checked on the said list, and announce the whole number thereof......The ballot box shall then be opened by the inspectors, the ballots taken therefrom, and audibly counted, one by one, by them, and when the count is completed, the whole number of ballots cast shall be announced; and the counting of the number of votes received by each person voted for shall then proceed.   The judge, in the presence of the inspectors, shall read aloud the name or names marked or inserted upon each ballot, together with the party name, or political appellation, under which each vote was cast, and the answers marked thereon to the question submitted, if any; and the clerks shall each carefully enter each vote as read, and keep account of the same in tally papers prepared for the purpose......All ballots, after being removed from the box, shall be kept within the unobstructed view of those present in the voting room, so that they may be able to see all the marks on each ballot, but out of their reach, until they are placed in the ballot box as required by law."   The purpose of ascertaining whether the number of the last ballot, the number of names checked on the voters' check-list and the total number of ballots correspond is to promptly detect whether ballots have been surreptitiously introduced into the ballot box.   In the ascertainment of this fact all the officers, including clerks and overseers, if any, necessarily join.   The judge is required to read the names of candidates voted for in such a way that all present can see the marks.   These provisions make it clearly manifest that it was the legislative intention that all should participate in the count.   It is true that the clerks may collusively not tally the votes as they are read, or that the judge may not read them correctly, but those are matters over which each one of them has the right to exercise supervision. They are engaged in a proceeding in which all are re-

quired to join. If all corruptly join in making a false count they are all answerable and may be jointly indicted. It is true that some may cheat the others, but that is a matter dependent upon evidence. When, in view of the provisions in the statutes to guard against such a result, the election officers all join in an alleged count of the votes and a return based thereon showing a number of votes far in excess of the number of ballots in the box, as is alleged to have been the fact in the present case, there must have been joint action by the persons charged with the duty of making an honest count and a true return, and they may be jointly indicted. We have deemed it necessary to refer thus at length to the legislation defining the duties of election officers for the reason that the learned counsel for appellant earnestly and persistently contended at the trial in the court below that the judge, inspectors and clerks of election could not be jointly indicted for the offenses here charged, and have in their argument presented to this court largely relied upon that point to sustain their contention that the judgment should be reversed. All the assignments of error which present the first question involved, above quoted, are dismissed.

The second question involved, viz: "Was the charge of the court inadequate, intemperate and unfair," is raised by specifications of error which refer to the charge of the court in reviewing the testimony and its expressions of opinion as to the inferences which might be drawn therefrom. We have carefully examined the testimony to which the charge of the court referred and are of opinion that it was fairly and impartially reviewed and commented upon by the court. It is not alleged that the testimony was misquoted, nor did the learned counsel for the defendants call the attention of the court to any mistakes or omissions in said recital, as they were required to do in case of an attempt to reverse the judgment upon such grounds. The difficulty with the position of the defendants was that the mere recital of their

own testimony, if it was believed, conclusively established that they had been guilty of gross neglect of duty and it was entirely proper for the court to so state to the jury; that statement being accompanied by the express instruction that such mere neglect of duty would not warrant the jury in finding the defendants guilty of the offenses charged by the indictment. The defendants principally placed their defense, so far as the facts were concerned, upon the allegation that they had not made a count of the votes and had not made any return of the same. It appeared in evidence, however, that a return had been made in their names and they had been paid for their services at said election, just as if they had fully complied with their duties. The evidence disclosed that although the defendants had been summoned before the judges computing the vote they had permitted the return to stand as their return and had never alleged that it was not their return until upon the trial, months after the return had been rejected by the court and the voters of the district deprived of any voice in that election. The return was made in the names of these defendants and the evidence that they permitted the return to stand as their return, after notice and in the circumstances here presented, warranted the finding by the jury that the defendants had made the count and the return. The specifications of error which raise the second question involved are dismissed. The specifications which raise the fourth question involved, viz: "Was the evidence sufficient to warrant the conviction of the defendants of the offenses charged in the indictment?" are without merit. It is undisputed that the defendants were duly organized as the election board for the district in question, each of them having taken the oath required by the statutes, and the duly qualified voters deposited their ballots in the manner required by law. After the polls closed and the ballot boxes were opened the irregularities began which culminated in a return setting forth that four hundred and forty-two votes had

been cast for the several candidates for city treasurer, while the ballot box contained only three hundred and twenty-three used ballots. The return was made in the names of these defendants and the evidence warranted the findings that these defendants had made the count and the return. The specifications of error which attempt to raise this question are overruled.

This leaves to be considered the third question involved, viz: "Erroneous and prejudicial instructions on reasonable doubt." This question is raised by the specification of error to the following language of the court, viz: "If you believe beyond a reasonable doubt that not all of them perpetrated willful fraud but that one or more of them are guilty, you may find such guilty and acquit those whom you do not believe to be guilty, or in respect to whom you entertain a reasonable doubt. Now, a reasonable doubt, let me say now once for all......one of the bugbears which we inherit from respectable antiquity, on which we are supposed to charge juries...... reasonable doubt is such as arises naturally in an honest, reasonable mind, after an honest, reasonable consideration of the testimony, a doubt which prevents such a mind from coming to a clear conviction of guilt. It is not a matter of surmise; it should not be a matter of sympathy; and it certainly should not be a refuge of cowardice." In Commonwealth v. Devine, 18 Pa. Superior Ct. 434, we said: "It is undoubtedly true that in many cases the rule as to a reasonable doubt is strained and overdone, but it is a time honored safeguard upon which all defendants have the right to rely. It is well understood in the administration of our criminal law and should be neither stiffened nor relaxed in its interpretation. We think the remarks of the trial judge tended to belittle the rule itself by characterizing it as a great bugbear." The Century Dictionary defines a "bugbear" as "Something that causes needless fright or apprehension." The word seems to have been originally understood as meaning a hobgoblin in the shape of a bear.

It is defined by the new Webster Standard Dictionary as meaning "A frightful apparition which vanishes away when boldly confronted." The word "bugbear" is usually accepted as something which alarms with imaginary or idle fears. Had the learned judge cautioned the jury that they must not make a bugbear out of the principle that a defendant must be proved guilty beyond a reasonable doubt, or if he had said to them that the matter was a bugbear to judges because they sometimes fell into error in defining it, an entirely different question would have been presented. The judge was instructing the jury as to the law, and they must have understood this language as meaning that the law regarded the doctrine of reasonable doubt as a bugbear inherited from respectable antiquity. We cannot say that this did not naturally tend to lead the jury to treat the principle with less respect than that to which, under the law, it is entitled. The rule as to a reasonable doubt may sometimes lead to the acquittal of a rogue, but it is a safeguard of the life and liberty of honest men. It is proper for the court to caution the jury against making the rule an excuse for the acquittal of a defendant in the absence of any reasonable doubt as to his guilt, against conjuring up a doubt where none exists, but that is entirely different from instructing them that the rule itself is a "bugbear," an apparition without substance. The sixth specification of error is sustained.

The judgment is reversed and a venire facias de novo awarded.

KELLER, J., dissents.