**[J-9-2022] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN RE: PRIVATE COMPLAINT FILED BY LUAY AJAJ | : | No. 55 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court at No. 3421 EDA |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | : | 2019 dated February 25, 2021, |
| | : | Reconsideration Denied May 3, |
| | : | 2021, Affirming the Order of the |
| | : | Montgomery County Court of |
| | : | Common Pleas, Criminal Division, at |
| | : | No. CP-46-MD-0001539-2019 dated |
| | : | October 31, 2019 and Remanding. |
| | : | |
| | : | ARGUED: March 9, 2022 |

**CONCURRING OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED: January 19, 2023**

I join the majority opinion. The Court's adoption of a unitary standard of review a trial court must employ when reviewing a Commonwealth attorney's disapproval of a private criminal complaint is a welcome development in this area of the law. *See* Majority Opinion at 24 (denouncing "the prior rubric, where the applicable standard of review depended on the asserted basis for the prosecutor's disapproval decision" and holding a reviewing court "may only overturn that decision if the private criminal complainant demonstrates that the disapproval decision amounted to bad faith, occurred due to fraud, or was unconstitutional"). And I fully endorse the approval of former Justice Cappy's definition of "bad faith" as articulated in his opinion in *Commonwealth v. Brown*, 708 A.2d 81, 87 (Pa. 1998) (plurality) (Cappy, J.) (opinion in support of reversal) ("bad faith is shown where the action under review was undertaken with a dishonest or corrupt purpose"). But although the Court's decision provides a much-needed step in the right direction, it has

also led me to believe we should, in an appropriate future case, consider more broadly whether the private criminal complaint system is operating as intended and, if so, whether it is constitutional.

More than a half-century ago we adopted Pennsylvania Rule of Criminal Procedure 105, the original ancestor for what is now labeled Rule 506.[1]  Titled "Approval of Criminal Complaints," Rule 506 provides:

> (A) When the affiant is not a law enforcement officer, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay.
>
> (B) If the attorney for the Commonwealth:
>
>> (1) approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority;
>>
>> (2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision.

Pa.R.Crim.P. 506.  By its plain terms, the rule permits private individuals (*i.e.*, "not a law enforcement officer") to submit a criminal complaint to an attorney for the Commonwealth for his approval or disapproval.  Pa.R.Crim.P. 506(A).[2]  If the Commonwealth's attorney approves the complaint he proceeds to prosecute as in any other case.  Pa.R.Crim.P. 506(B)(1).  Alternatively, if the Commonwealth's attorney disapproves the complaint, he

---

[1] The rule has been renumbered three times since its initial adoption: to Rule 133 in 1974; to Rule 106 in 1995; and finally, to Rule 506 in 2001.  It has been subject to twice as many amendments over the same period.

[2] Notably, "throughout the history of this Commonwealth and until 1974, private criminal complaints were not subject to review by the district attorney." *Commonwealth v. Benz*, 565 A.2d 764, 769 (Pa. 1989) (plurality) (Larsen, J., concurring).  Although it is unclear what exactly prompted the 1974 amendment to then-Rule 133, apparently "the changes that were made . . . were not intended to radically alter the practice of instituting criminal proceedings by private criminal complaint" but "merely concerned **who** was to approve the complaint in the first instance."  *Id.* (emphasis in original).

must state the reasons why on the form and return it to the complainant. Pa.R.Crim.P. 506(B)(2). The rule then permits the complainant to "petition the court of common pleas for review of the decision." *Id*.

But what happens after that? The rule doesn't specify; it simply hits a dead end. It says nothing about the standard the court of common pleas must apply in "reviewing" the Commonwealth's decision to disapprove the complaint (and, of course, that is the issue the Court resolves today). Nor does the rule say anything about how the court is to proceed if, upon its review, it concludes the Commonwealth has violated the applicable standard. Still, even in the absence of an apparent text-based remedy, the orders below directing the Commonwealth to prosecute against its will clearly reflect a long-held belief among the courts that the rule "reposes an awesome power in the judiciary, namely, the authority to **order** a prosecutor . . . to prosecute a criminal complaint in the name of the Commonwealth." *Commonwealth v. Brown*, 669 A.2d 984, 994 (Pa. Super. 1995) (*en banc*) (Saylor, J., dissenting) (emphasis added), *aff'd*, 708 A.2d 81 (Pa. 1998). Less clear is whether this belief can withstand legal scrutiny.

We have emphasized courts should "seldom interfere with a prosecutor's charging decision" because the prosecutor, a constitutionally elected member of the executive branch, "is afforded such great deference[.]" *Commonwealth v. Clancy*, 192 A.3d 44, 53 (Pa. 2018); *accord Commonwealth v. Stipetich*, 652 A.2d 1294, 1295 (Pa. 1995) ("the ultimate discretion to file criminal charges lies in the district attorney"); *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"). Given this, there is a colorable argument that when a court forces a district attorney to commence a prosecution he opposes — whether for legal or policy reasons — it inevitably "interfere[s] with the prosecutor's discretionary functions" and thereby "violates the constitutional

principle of separation of powers." *Commonwealth v. Buonopane*, 599 A.2d 681, 684 (Pa. Super. 1991).[3]

Of course, the issue is not so simple or one-sided; worthy counterarguments surely exist. My learned colleague raises perhaps the strongest one: private criminal complaints have a unique and "long history in our Commonwealth." Concurring & Dissenting Opinion at 16 (Wecht, J.). Indeed, we have explained the "historical genesis" for private criminal complaints "long predates our modern system's belief that crime injures society as a whole." *In re Hickson*, 821 A.2d 1238, 1244 (Pa. 2003); *see id*. at 1244-45 ("provisions authorizing private criminal complaints, such as Rule [5]06, have their roots in a time when crimes were viewed as an offense against individuals rather than the state, visiting upon directly involved parties a harm greater than that experienced by the population as a whole"). We elaborated on this history in *In re Hickson*:

> In colonial Pennsylvania, crimes were viewed as an offense against the individual victim, and private prosecutions were the most common mode by which the criminal justice system functioned in the colonial era. This was consonant with the English common law principle that the Crown did not supply a public prosecutor to handle routine felonies. The victim or his family was therefore required to hire counsel to bring the guilty party into the criminal justice system. In fact, the victim served a multi-function role,

---

[3] Surprisingly, we have never confronted this constitutional question. The Commonwealth raised a different separation of powers claim in *Benz*, but we did not address it because the district attorney there "never purported to predicate his decision not to prosecute upon the exercise of his prosecutorial discretion"; rather, he "expressly stated that the decision to decline prosecution resulted from his determination that the evidence would not sustain a *prima facie* case." 565 A.2d at 768. In that limited context, we held the district attorney's decision to disapprove the complaint, based purely on legal reasons, was "within the purview of the judicial system to review" and affirmed the trial court's order directing the district attorney to commence prosecution. *Id.* In *Commonwealth v. McHale*, 97 Pa. 397 (Pa. 1881), we arguably considered a separations of powers claim (though not expressly identified as such), but only within the context of assessing the permissible bounds of legislative, rather than judicial, encroachment on prosecutorial powers. *See id.* at 406 (holding "the legislature may not abolish the office" of the district attorney but "it can control the officer" by "regulat[ing] the performance of his duties" and "punish[ing] him for misconduct").

in which he apprehended, prosecuted, and sometimes even jailed the accused.

In the post-Revolutionary era, the state, as the representative for society as a whole, began to be seen as the injured party in criminal matters, and the role of the government in prosecuting criminal matters began to grow; ultimately, the Pennsylvania Legislature established the office of district attorney in 1850. Yet, with this shift in how crimes were generally prosecuted, a citizen's right to pursue his victimizer in criminal courts via a private criminal complaint was never abolished in this Commonwealth. Rather, the Legislature enshrined it in statutory enactments, and later, this [C]ourt provided an avenue via the predecessor to Rule [5]06.

*Id*. at 1244 (internal quotations, citations, and brackets omitted).

The "statutory enactments" referenced above warrant particularly close inspection. As noted, "[i]n 1850 the General Assembly enacted legislation transferring the duties performed by [the Attorney General] to an official elected by the voters of the county and designated 'district attorney,' Act of May 3 ,1850, P.L. 654, §1." *Com. ex rel. Specter v. Freed*, 228 A.2d 382, 384 (Pa. 1967). Sixteen years later, the General Assembly passed the Act of March 12, 1866, P.L. 85, §1 which remains unchanged to this day as 16 P.S. §7710 ("when private counsel allowed to prosecute"). It states:

If any district attorney, within this Commonwealth, shall neglect or refuse to prosecute, in due form of law, any criminal charge, regularly returned to him, or to the court of the proper county; or if, at any stage of the proceedings, the district attorney of the proper county, and the private counsel, employed by the prosecutor, should differ as to the manner of conducting the trial, it shall be lawful for the prosecutor to present his or her petition to the court of the proper county, setting forth the character of the complaint, and verify the same by affidavit; whereupon, if the court shall be of the opinion that it is a proper case for a criminal proceeding or prosecution, it shall be lawful for it to direct any private counsel, employed by such prosecutor, to conduct the entire proceeding, and where an indictment is necessary, to verify the same, by his own signature, as fully as the same could be done by the district attorney; and this act shall apply to all criminal proceedings heretofore commenced, and still pending, as well as to those which shall be instituted hereafter.

16 P.S. §7710.[4]

To my knowledge, 16 P.S. §7710 is the oldest and only statute — aside from its siblings, 16 P.S. §§1409 and 4408 — enacted by our General Assembly that has anything to do with the private criminal complaint system. Yet, the only interpretive insight this Court has provided concerning this authority was in *McHale*, nearly 150 years ago. In that case the losing candidate in the 1877 general election for district attorney of Schuylkill County, W. John Whitehouse, believed several individuals had engaged in a conspiracy to fraudulently increase the vote count of his opponent, Adolph W. Schalck. Seeking their prosecution, Washington

> presented to the court [of common pleas a] petition, under [16 P.S. §7710], setting forth that a difference of opinion as to the proper manner of proceeding has occurred . . . in that the district attorney [*i.e.*, Schalck] has refused to sign and send before the grand jury the bills of indictment prepared by the private counsel [employed by Washington], . . . and praying the court to direct the private counsel, Guy E. Farquhar, Esq., . . . to conduct the entire proceedings, and if necessary to verify the indictments by his own signature.

*McHale*, 97 Pa. at 398 (internal quotations omitted). The trial court gave District Attorney Schalck "an opportunity to sign the bills" of indictment; when he refused, the court granted Washington's petition "and appointed [Attorney Farquhar] special district attorney to prosecute the cases." *Id*. After he was sworn in, Attorney Farquhar "signed and

---

[4] This statute originally applied to all elected district attorneys in the Commonwealth. In 1953 it was repealed as to counties of the second class, and then repealed again in 1955 as to counties of the third through eighth classes. *See* 16 P.S. §3000.3901, §6301. Today, 16 P.S. §7710 resides within the part of the County Code that applies only to counties of the first class, *i.e.*, Philadelphia. As for all other counties, the General Assembly enacted 16 P.S. §4408 in 1953 and 16 P.S. §1409 in 1955, both titled "[w]hen private counsel may prosecute." These statutes now govern second class counties and counties of the third through eighth classes, respectively. Only a few insignificant textual differences exist between these two statutes and 16 P.S. §7710. I focus on 16 P.S. §7710 (which I recognize would not govern this case from Montgomery County) solely because it is the historical legislative source from which the other two were derived.

presented the indictments to the grand jury, . . . which body found a true bill in each case."

*Id*. The indictments were later quashed, but this Court reinstated them on appeal.

Of particular relevance here, the *McHale* Court rejected the defendants' argument that Attorney Farquhar's "appointment was illegal because the Constitution adopted since the act of 1866 was passed,[5] makes the district attorney a constitutional officer, and as such he cannot be stripped of his powers by the legislature." *Id*. at 406. The Court found "little force in this suggestion[,]" concluding that

> [w]hile the legislature may not abolish the office, it can control the officer. They can regulate the performance of his duties, and punish him for misconduct, as in the case of other officers. And where he neglects or refuses to act, or where, from the circumstances of a given case, it is improper and indelicate for him to act, it is competent for the legislature to afford a remedy. This is all that [16 P.S. §7710] does, and we think its provisions are not obnoxious to any constitutional provision.

*Id*.

*McHale* is enlightening. For one thing, it provides historical context for some of the unfamiliar terms that appear in 16 P.S. §7710 (as well as in 16 P.S. §§1409 and 4408), particularly the phrase "private counsel employed by the prosecutor." Although common sense suggests "prosecutor" and "district attorney" are one and the same, *McHale* teaches that "prosecutor" in this context actually means "private criminal complainant." That is the only explanation for why the *McHale* Court permitted Attorney Farquhar, the private counsel employed by Washington, the private criminal complainant, to prosecute in District Attorney Schalck's stead.[6] Equally illuminating is how the Court described the

---

[5] Article XIV of the Constitution of Pennsylvania of 1874 designated the district attorney a "[c]ounty officer" for the first time; this designation continues today, though the provision has since been relocated. *See* PA. CONST. art. IX, §4.

[6] In *Commonwealth v. Mayfield*, 247 A.3d 1002 (Pa. 2021), we addressed whether a trial court erred in removing a district attorney from a case and appointing a private defense attorney to handle the matter. We unanimously held it did, explaining that "nothing in the Commonwealth Attorneys Act, [71 P.S. §§732-101–732-506,] **or in any other statute**, (continued…)

statute's mechanism for replacing the elected district attorney with the private criminal complainant's counsel: as a "remedy." In the Court's words, "all [16 P.S. §7710] does" is "afford a remedy" when a district attorney "neglects or refuses to act, or where, from the circumstances of a given case, it is improper or indelicate for him to act**."** *Id*.

As *McHale* demonstrates, the trio of legislative enactments pertaining to private criminal complaints is "not synonymous" with Pa.R.Crim.P. 506. *Hickson*, 821 A.2d at 1242 n.3. Whereas the statutes grant a clear (if unconventional) remedy — the right to have the private complainant's attorney "conduct the entire proceeding" on the district attorney's behalf, 16 P.S. §7710 — the rule facially provides none. Maybe the difference is insignificant; after all, we have described one of these statutes, 16 P.S. §1409, as an entirely "separate . . . vehicle for bringing a private criminal complaint" from Rule 506. *Id*. But it's also possible that statement is wrong. Our constitutional rulemaking authority is broad, but it is not limitless. *See* Pa. Const. art. V, §10 (granting this Court rulemaking authority to the extent it does not "abridge, enlarge, [or] modify the substantive rights of any litigant"). The notion Rule 506 exists in a legal vacuum, unmoored to legislative authority granting private individuals a substantive right to intervene in the prosecutorial affairs of an elected member of the executive branch, seems untenable. *See generally Commonwealth v. McMullen*, 961 A.2d 842, 847 (Pa. 2008) ("As a general rule, substantive law creates, defines, and regulates rights; procedural law addresses the method by which those rights are enforced."). It is perhaps more likely that Rule 506's

---

authorizes trial courts to deputize private attorneys to represent the Commonwealth in criminal matters." *Id*. at 1003 (emphasis added). It appears we may have spoken a bit too broadly with respect to the bolded dicta above, given that 16 P.S. §§1409, 4408, and 7710 all authorize courts to appoint private attorneys to handle criminal prosecutions, as confirmed by *McHale*. *See also Kyle v. McNamara & Criste*, 487 A.2d 814, 816 (Pa. 1985) ("16 P.S. §1409 allows private counsel to act as prosecutor in limited situations where the District Attorney neglects or refuses to prosecute a complaint"). Nevertheless, *Mayfield* is otherwise sound because that matter did not involve a private criminal complaint, meaning the trial court could not have relied upon any of these statutes.

ancestor was adopted merely to complement the relevant statutes, by giving the district attorney a chance to "approve the complaint in the first instance," before the complainant involves the judiciary, a co-equal branch of government. *Benz*, 565 A.2d at 769 (Larsen, J., concurring).[7]

These are difficult questions. And as Justice Wecht rightly points out, the parties have not "develop[ed] arguments about what relief the judicial creation that is Rule 506 might afford, its history, and whether that relief might offend the delicate balance between coordinate branches of our government." Concurring & Dissenting Opinion at 17 (Wecht, J.). We also lack briefing on the interplay between Rule 506 and 16 P.S. §§1409, 4408, and 7710. More importantly, at oral argument the Commonwealth forthrightly stated it had not preserved or raised any of these "thorny constitutional questions," so they are not properly before us today. *Id*. at 15. In my view, however, we should consider them in a proper case should one arise. In the meantime, I join the majority opinion in full.

---

[7] If that is the case though, and Rule 506 is meant to work in tandem with those legislative enactments providing a substantive remedy of **private** prosecution, then it would appear courts have assumed a power to compel **public** prosecution that — in addition to raising legitimate separation of powers concerns — is not supported by the rule's text and, in fact, conflicts with the statutory source the rule is meant to serve. *See Brown*, 708 A.2d at 88 n.6 (Cappy, J.) (opinion in support of reversal) (court order forcing Attorney General to "go forward with the prosecution of [a] private criminal complaint" was "at odds with the legislative directive found in 16 P.S. §1409, which would require the attorney bringing the private criminal complaint to prosecute same").