Commonwealth *v.* Albert, Appellant.
Commonwealth *v.* Zaiden, Appellant.

185

Argued December 7, 1942.

Before KELLER, P. J., BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Jacob Frank,* for appellants.

*E. T. Adair,* Assistant District Attorney, with him *Russell H. Adams,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., January 28, 1943:

Michael Zaiden, Phillip Albert, and three others, all members of the Election Board of the Second District of the Third Ward of the city of Pittsburgh, were indicted for violating the Election Laws and being parties to a conspiracy.

Indictment No. 145, February Sessions 1942, containing ten counts, charged the five persons named therein with various violations of the Election Laws at the November Election of 1941. Albert was convicted on the first, second, third, fifth, seventh, and eighth counts of the indictment and Zaiden was convicted 'on the second, fifth, and seventh counts. The other defendants were acquitted.

Indictment No. 146, February Sessions 1942 contained two counts. The first one charged the five persons named therein, two of whom were appellants,

with unlawfully, wickedly, and maliciously conspiring and agreeing together that they would hinder and prevent a free and fair election. The second count alleged that in pursuance of this unlawful agreement the conpirators (1) knowingly permitted persons not designated as qualified electors to sign the names of electors to voter certificates; (2) failed and neglected to compare signatures on voter certificates with signatures on the district register; (3) allowed assistance and gave assistance themselves to persons not legally entitled thereto; and (4) falsely certified the return of the votes cast. Albert and Zaiden were convicted on both these counts and their codefendants were acquitted.

Motions for arrest of judgment and a new trial were filed and after argument were denied. Sentences were then duly imposed and these appeals followed.

The appellants' first assignment of error is to the court's refusal to sustain their motion for binding instructions on the conspiracy indictment, No. 146. They contend that their conviction was based entirely on circumstantial evidence and further that as three of their codefendants in this indictment were found not guilty they should have been acquitted.

We will briefly refer to some of the more important portions of the evidence upon which the Commonwealth relied. Two witnesses testified that they had not voted, but it was disclosed on the list of voters that unqualified electors voted in their names and these votes were counted. From the record it appeared that Joe Jackson, Lyman Owens, and Amerigo Gatto voted twice. One, Jake Thurman, stated that he lived in this voting district and signed a card when he voted. The board's records showed another voter's card with his name thereon which Thurman did not sign, as shown by the comparison of signatures. Both votes were counted. There was convincing evidence also that a number of

electors who were not entitled to assistance under the law voted with assistance. There was proof that John Brown was not only given assistance by someone unknown to him, although the district register showed he was not entitled to assistance, but that another vote was cast and recorded under his name and that there was only one John Brown registered in this district. Albert admitted that one of the John Brown signatures on the voter's certificate was not similar to the signature of Brown in the district register. The Commonwealth established that the records were not kept in accordance with the requirements of the Election Code and that in at least three instances the signatures on the voter's certificates were dissimilar to the signatures in the district register. The defendants permitted one Stroy Burks to vote notwithstanding his signature did not appear on a register of voters.

The Commonwealth showed further that Albert, the minority inspector, and Zaiden, the majority inspector, were seated next to each other on the Election Board, and that after the signatures were compared by Albert the cards were passed to Zaiden who recorded the name of the voter in the list of voters and made a record of any assistance given to the voters. The Commonwealth argues that the evidence was ample to support the charge that a conspiracy existed between these appellants and that their preconceived corrupt agreement was carried into effect.

It is true, as appellants state, the Commonwealth did not produce any direct proof of an express, illegal concerted plan. That was not necessary. Where the conduct of parties indicate they are acting together with a common and corrupt purpose in view the jury may be permitted to infer that a conspiracy existed: *Commonwealth v. Rhey,* 140 Pa. Superior Ct. 340, 349, 14 A. 2d 192. This court in *Commonwealth v. Rosen et al.,* 141 Pa. Superior Ct. 272, 14 A. 2d 833, speak-

ing through Judge HIRT, said p. 276: "A conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." See, also, *Commonwealth v. Antico,* 146 Pa. Superior Ct. 293, 22 A. 2d 204.

In the tenth point submitted to the court by the defendants they asked that the jury be instructed as follows: "In view of the fact that the alleged conspiracy is based upon circumstantial evidence only, in order to find the defendants or any of them guilty of a charge in this case, they must find beyond a reasonable doubt that the facts and circumstances must be consistent with and point to the guilt of the defendants and must be inconsistent with their innocence; otherwise, they must be acquitted." That point correctly states the law and it was affirmed by the trial judge. A consideration of all the testimony brings us to the conclusion that the issues involved were for the jury's consideration.

Appellants' next contention covers assignments of error Nos. 2, 3, and 4. Complaint is made that the court erred in refusing to affirm their first point relating to count one, indictment No. 145, which requested the court to say to the jury that as there was no legal duty imposed upon Zaiden and three of his other codefendants to make comparison of signatures, as that duty devolved upon Albert alone, they must be acquitted on the first count in bill No. 145, charging them with knowingly permitting improper persons to sign names of electors to voter's certificates. The complete answer to that contention is that Zaiden was acquitted on that count.

Assignment No. 3 is directed to the court's refusal to affirm defendants' first point for charge relating to

count two in bill No. 145, which asked the court to state to the jury that there was no legal duty on the defendants "to permit or allow any person or persons to sign his or their name, upon the voters' certificates, the said defendants must be acquitted as to this count." This point was properly denied. In the first place the point is not well drawn; it lacks clarity and in the second place there was a duty upon each member of the election board to be on guard to prevent any form of fraud or irregularity that would interfere with a fair election. An election officer cannot escape that responsibility. If irregularity or fraud is being perpetrated in the course of an election, when detected appropriate action should be taken immediately to stop the misconduct. There can be no question, therefore, that it was the duty of Zaiden, who had the numbered list of voters and the record of those who assisted voters, and of Albert, whose duties included the comparing of signatures of those who desired to vote, to be watchful so that our Election Laws, especially those relating to matters entrusted to their special care, should not be violated.

Assignment No. 4 complains that the court failed to charge generally as to the duties of the various election officers. Albert and Zaiden each testified as to the position he occupied on the board and explained his duties. The trial judge in his charge to the jury adequately stated the responsibility that rested upon these appellants. He referred in considerable detail to the duties imposed upon election officers by the provisions of sections 1210 and 1218 of the Election Code approved June 3, 1937, P. L. 1333, Art. XII, 25 PS §§3050, 3058. Attention was directed to the election officer in charge of the district register being required to compare the electors' signatures on the voters' certificates with that in the district register and the other precautions that must be taken by the members of the

board to prevent duplication in voting and other fraudulent conduct. The necessary procedure to be followed when a voter requires assistance was also clearly explained.

There is no sound basis for concluding that the jury did not have a clear understanding as to the duties of the respective defendants. After all the evidence had been adduced and the judge's charge had been delivered defendants evidently did not entertain the view that the jury might have a misconception of the responsibility of these appellants owing to an inadequacy of the court's instructions. At the end of his charge the judge asked if there was anything for additional charge or correction and Mr. Frank, representing the defendants, replied: "May I ask one thing, your Honor: may I ask your Honor to instruct the jury as to the number of witnesses on one side or another is not to control the jury in determining the truth in this case." That was the only request made by the defendants' counsel.

The court again asked when the jury returned for further instructions, which were given, if the defendants were satisfied with the charge and said: "Is there anything either side wishes me to say in addition?" The reply by Mr. Frank was "No." In such circumstances these appellants are not now in a position to successfully assert that the instructions pertaining to those matters of which complaint is made were inadequate.

The last contention of the appellants, covered by their fifth and sixth assignments, is that the verdicts were inconsistent in convicting Albert and Zaiden and acquitting the other three election officers. Alleged inconsistencies were considered exhaustively by this court in *Com. of Pa. v. Kline*, 107 Pa. Superior Ct. 594, 164 A. 124, in which Judge PARKER, now Mr. Justice PARKER, delivered the opinion citing numerous authorities including *Dunn v. United States*, 284 U. S.

390, wherein Mr. Justice HOLMES stated: "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." Judge PARKER said, p. 599: "Conceding, only for the sake of argument, that there is an inconsistency or .repugnancy between the verdicts on the fourth and fifth counts ...... such is not sufficient ground for arresting judgment on the verdict of guilty." There is no merit in these assignments.

*Commonwealth v. Sylvanus*, 77 Pa. Superior Ct. 410, and *Commonwealth v. Cover*, 83 Pa. Superior Ct. 402 relied upon by the appellants, do not control this case. The Sylvanus case was reversed primarily because of erroneous statements in the charge respecting reasonable doubt. In the Cover case the facts were quite dissimilar to those in the case at bar.*

A careful review of this record fails to convince us that we should disturb the judgment entered in the court below.

The assignments of error are overruled. The respective judgments in the appeals at Nos. 145 and 146 February Sessions, 1942, are affirmed, and it is ordered that the defendants appear in the court below at such time as they may be there called so that each may be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time each of these appeals was made a supersedeas.

---

* The present election code was not in effect when the election in that case was held.