Commonwealth *v.* Schwartz et al., Appellants.

364

365

Argued June 13, 1967. Before ERVIN, P. J., WAT-KINS, MONTGOMERY, JACOBS, and SPAULDING, JJ. (WRIGHT and HOFFMAN, JJ., absent).

Before McDEVITT, III, P. J.

*Marvin Comisky*, with him *Edwin P. Rome, Goncer M. Krestal*, and *Blank, Rudenko, Klaus & Rome*, for appellants.

*Richard A. Sprague*, First Assistant District Attorney, with him *John A. McMenamin* and *Alan J. Davis*, Assistant District Attorneys, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, P. J., September 14, 1967:

These are appeals of Harry C. Schwartz, a magistrate, and Abraham Siegel, a constable, from judgments of sentence, after having been found guilty by a jury on a variety of charges arising out of the investigation of the Magistrates Courts in the City of Philadelphia.

Both defendants were found guilty of the crime of conspiracy, Indictment No. 880 charging that they did "falsely and maliciously conspire to insult public justice; to commit official oppression while exercising their respective public offices; to use the power of their re-

spective offices for their own personal gain—Constable Siegel directly and Magistrate Schwartz indirectly through his wife—and to cheat and defraud the debtors in the civil cases set forth in the attached list by adding to each of said claims a false and fictitious sum represented to be interest owed by the alleged debtors to the creditors; and did further conspire to violate the Constable's Fee Bill, Act of July 20, 1917, P. L. 1158, as amended, 13 P.S. §61, by demanding, imposing and adjudging in each claim a false, fictitious and excessive sum for constable's travelling expenses instead of the legal sum provided by Act of Assembly." Each defendant was sentenced to from 11 to 23 months in the Philadelphia County Prison for this crime.

Schwartz was also found guilty on Indictment No. 881, which charged that he "in his capacity as magistrate, did commit malfeasance, misbehavior in office and official oppression by wilfully, knowingly and corruptly issuing civil summonses and sitting in judgment upon the civil cases set forth and at the dates set forth in the attached list, with the knowledge that his wife, Lillian Schwartz, as an officer and principal owner of the Active Collection Agency, Inc., which then and there was the collection agent or sub-agent of the various creditors of said claims, would obtain a direct pecuniary benefit from the results of the said cases by receiving a commission on all judgments and costs paid by the alleged debtors and that he, therefore, would indirectly benefit thereby." The court suspended sentence on this indictment.

Schwartz was also found guilty by the jury on Indictment No. 882, which charged that he "a magistrate of the City and County of Philadelphia, in his capacity as magistrate, did commit misbehavior in office" and then the language on this indictment is similar to that set forth for the preceding indictment. Sentence was suspended by the court on this indictment.

Schwartz was also found guilty by the jury on Indictment No. 883, which charged that he "a magistrate of the City and County of Philadelphia, in his capacity as magistrate, did commit official oppression by wilfully, knowingly and corruptly issuing civil summonses and sitting in judgment upon the civil cases set forth and at the dates set forth in the attached list" and then the language of this indictment is similar to that set forth in the preceding indictment. Sentence was suspended on this indictment by the court.

Schwartz was also convicted on Indictment No. 884, which charged that he "a Magistrate of the City of Philadelphia, did, in connection with the thousands of civil cases filed in his Court, and more particularly the civil cases set forth and at the times set forth in Schedule attached hereto, wilfully and corruptly neglect and fail to perform the duties of his office by:

"1. Failing to strike off the false and fraudulent amounts represented by Constables to be interest allegedly owed by debtors to the creditors of said claims;

"2. By failing to award and enter judgments for proper and legal constable fees and travelling expenses in said cases;

"3. By failing to require adequate and legal constable's returns of service in the said cases; and

"4. By failing to require the constable to endorse on the execution or a schedule thereto attached, the goods or chattels levied upon and the time of such levies when such levies were made." Sentence was also suspended on this indictment.

Schwartz was also found guilty by a jury on Indictment No. 885 charging that he "a magistrate of the City and County of Philadelphia, in his capacity as magistrate, did commit malfeasance by knowingly and corruptly issuing civil summonses and sitting in judgment upon the civil cases set forth and at the dates set forth in the attached list" and then the language in

this indictment is similar to that in Indictment No. 883. Sentence was also suspended by the court on this indictment.

Schwartz was also found guilty on Indictment No. 891, which charged that he "a Magistrate of the City of Philadelphia, who was interested in Constable Abraham Siegel and the Active Collection Agency, Inc. unlawfully and feloniously did then and there falsely and designedly pretend and represent to Dorothy and Richard Iseley, by issuing a summons and entering judgment thereon: (1) That there was claimed by the Bell Telephone Company, a creditor in a civil claim against Dorothy and Richard Iseley, the sum of $2.50 as interest on the claim and that the said interest was owed by defendants to the said creditors; whereas, in truth, and in fact as he, the said Magistrate Schwartz then and there well knew, the said creditor and its agent for collection, the Philadelphia Credit Bureau, which had sent the claim to Abraham Siegel or to Active Collection Agency, Inc., of which Abraham Siegel was then an officer, and of which said Magistrate Schwartz's wife, Lillian Schwartz, was a principal shareholder and president, did not claim any interest from the said Dorothy and Richard Iseley and had not asked the said Abraham Siegel or Active Collection Agency, Inc. to collect any interest from said Dorothy and Richard Iseley; and that the said sum of $2.50 was fictitious and false, and which he well knew had been fraudulently added to the claim by Abraham Siegel or Active Collection Agency, Inc.; and

"(2) that the lawful constable's fee and mileage for Constable Abraham Siegel's service of Summons No. 36081, issued by Magistrate Harry C. Schwartz in connection with the above mentioned claim, was $6.50 whereas in fact, the said sum was a greater compensation for service of the summons and mileage than is provided by law and was a fictitious and false amount,

"he, the said Magistrate Harry C. Schwartz well knowing said pretences to be false, by means of which he did aid, assist, or abet Constable Abraham Siegel and the Active Collection Agency, Inc. in obtaining from the said Dorothy and Richard Iseley the sum of $9.00 with intent to defraud the said Dorothy and Richard Iseley." On this indictment Schwartz was sentenced to a term of 11 to 23 months in the Philadelphia County Prison to run concurrently with the sentence on the bill No. 880 and he was also directed to pay a fine of $2,500 on this bill of indictment.

Schwartz was also found guilty on a similar bill of Indictment No. 892 for defrauding Kasmir and Elva Cylbuski. A similar sentence was imposed as that which was imposed on the preceding indictment.

Schwartz was also found guilty on another bill of Indictment No. 892 for defrauding Kasmir and Elva ment, for defrauding Lillian and Gustave Huston. A similar sentence was imposed on this indictment as on the preceding indictment.

Schwartz was also found guilty on another bill of indictment, No. 905, similar to the preceding indictment, for defrauding Bernard and Tilly Granoff, and a similar sentence was imposed as on the preceding indictment.

Siegel was found guilty by a jury on Indictment No. 893, which charged that he "a Constable of the City of Philadelphia and an officer of Active Collection Agency, Inc. unlawfully and feloniously did then and there falsely and designedly pretend and represent to Kasmir and Elva Cylbuski:

"(1) That there was claimed by Gimbel, a creditor in a civil claim against Kasmir and Elva Cylbuski, the sum of $1.50 as interest on the claim and that said interest was owed by defendants to the said creditor; whereas, in truth and in fact as he, the said Abraham Siegel then and there well knew, the said creditor and

its agent for collection, the Philadelphia Credit Bureau, which had sent the claim to Abraham Siegel or to Active Collection Agency, Inc. of which Abraham Siegel was then an officer, for collection, did not claim any interest from the said Kasmir and Elva Cylbuski and had not asked Abraham Siegel or Active Collection Agency, Inc. to collect any interest from said Kasmir and Elva Cylbuski; and whereas in fact he knew that the sum of $1.50 was fictitious and false; and

"(2) that his, the said Abraham Siegel, lawful constable's fee and mileage for his service of Summons No. 37131 issued out of Magistrate Court No. 11, in connection with the above mentioned claim, was $6.50, whereas in fact, the said sum was a greater compensation for his fees for service of the summons and mileage than is provided by law, and was, as he well knew, a false and fictitious sum,

"he, the said Abraham Siegel, well knowing said pretenses to be false, by means of which he did obtain from the said Kasmir and Elva Cylbuski the sum of $8.00 with intent to defraud the said Kasmir and Elva Cylbuski."

On this indictment he was sentenced to a term of not less than 11 nor more than 23 months in the Philadelphia County Prison, to run concurrently with the sentence imposed on Bill No. 880. He also was sentenced to pay a fine of $1,250.

Siegel was also found guilty on three other similar indictments, Nos. 896, 898 and 900, to defraud Dorothy and Richard Iseley, Lillian and Gustave Huston and Bernard and Tilly Granoff. Similar sentences were imposed on these indictments as that imposed under the indictment No. 893.

The evidence, viewed in the light most favorable to the Commonwealth, established the following facts: In 1954 Harry C. Schwartz was an elected constable in the City of Philadelphia. On January 4, 1955 he ap-

pointed defendant Abraham Siegel as deputy constable. On November 5, 1957 Siegel was elected constable, effective for six years from January 2, 1958, and Schwartz was re-elected a constable on the same date, effective as of January 2, 1958. Schwartz was thereafter appointed to serve as magistrate of Court No. 11, effective as of December 23, 1960, and was elected to serve a full six year term, effective from January of 1962. Constable Siegel was again re-elected to serve a six year term effective from January of 1964.

At the time when defendant Schwartz was a duly elected constable of the City of Philadelphia, and on January 20, 1954, he caused the name of Active Collection Agency to be registered as the name under which he would operate his collection business. On January 4, 1961 articles of incorporation were filed with and approved by the Secretary of the Commonwealth incorporating Active Collection Agency, Inc. As of January 10, 1961 the officers of the corporation were Lillian Schwartz, president; Sidney B. Goldstein, a certified public accountant, secretary; and Abraham Siegel, treasurer.

Lillian Schwartz was at all times material to this case the wife of defendant Harry C. Schwartz. Lillian Schwartz was not active in the operation of the collection business, although she received a substantial salary as president of the corporation.

Before Schwartz was elected as a magistrate he did collection work for Philadelphia Credit Bureau. Active Collection Agency, Inc. continued to do work for the Philadelphia Credit Bureau but in much larger volume.

On numerous occasions defendant Siegel made improper service of the summons, improper service of execution and levy, or failed to make a levy of any kind, and filled in as standard practice identical descriptions of property levied upon in his returns. In the cases proved, certain amounts of money were added to the principal debt owed by the debtor. In each case

arbitrary amounts of interest were added, which were pocketed by the collection agency and not paid to the creditor. Siegel also added mileage fees without regard to actual mileage, notwithstanding that the "service" was often improperly made. In addition, in each case costs were imposed of $7.50 or $9.00, in direct contravention of the statutory fee of $2.50.

The connection between Schwartz and Siegel was proved by the following facts. Magistrate Schwartz had been a constable prior to his election as a magistrate. As a constable he appointed Siegel as his deputy constable, and also operated the Active Collection Agency. Upon his elevation to the minor judiciary Schwartz turned over the collection business to his wife, Lillian, and defendant Siegel, who continued on as a constable. Schwartz, notwithstanding his wife's position in Active Collection Agency (she owned 75% of the voting and 65% of the preferred stock from the date of incorporation until the end of 1963; thereafter 50% of each and received a salary for 1961 of $5,200, which was increased to $18,785.94 in 1964), continued to sit in judgment on cases where the creditor was represented by Active Collection Agency, Inc. The inescapable conclusion is that the business of Active Collection Agency, Inc. increased as a direct result of the relationship between Siegel and Schwartz. Significantly, although Mrs. Schwartz was president and principal stockholder of Active Collection Agency, Inc., and received until 1964 a substantially greater proportion of the profits by way of what was called salary, she actually contributed no actual work or effort to the collection business. Defendant Siegel was, for all practical purposes, Active Collection Agency, Inc. Philadelphia Credit Bureau's representative testified he dealt directly with Siegel.

Although Active Collection Agency had its own office, Siegel operated primarily out of Magistrate Court No. 11. In virtually every case testified to by Magis-

trate Schwartz' clerk, the docket or daybook contained only the name of the parties, address of defendant, $2.50 for costs, summons number, date of issuance and return date. To ascertain the other information about the disposition of cases before Magistrate Schwartz, it was necessary to examine the so-called "jackets" in which the suit papers and other dockets were kept. On the face of these jackets appeared the notation "judgment," and amounts corresponding to the principal debt, interest and costs. Notations in the dockets or daybooks were made by the magistrate's clerk; however, notations on the jackets were made by the constable.

In at least one case Magistrate Schwartz entered a judgment where the debt due exceeded $100, the limit of his civil jurisdiction. Interest and costs added to the judgment increased the debtor's liability from $105.36 to $129.60.

The pattern of Siegel's conduct was that he would receive an IBM card or notice of claim with the name and address of the debtor, the amount of the real debt and the date of the last communication or payment by the debtor. Siegel would then add to the claim an arbitrary sum for interest and in some cases, without explanation, increased the amount of the real debt. A summons was then made out by Siegel and, after issuance by Magistrate Schwartz, service was made, often by mail rather than personally, as required by law, and on some occasions the summons was never actually served. This was followed by the entry of judgment by Schwartz in favor of the creditor. Although by law the constable is entitled to receive a fee of $2.50 plus $.10 per mile for service of the summons, he was consistently awarded $5.00 for one defendant and $6.50 for two defendants, without regard to the actual amount to which he was entitled and without regard to the improper service. The constable would fill in the

amount of the debt on the summons after its issuance by Magistrate Schwartz.

After judgment was entered, Schwartz permitted Siegel to send out writs of execution under his, Schwartz' name, but Schwartz never followed up Siegel's actions. Siegel's levies were uniform in their impropriety—notices of levy and inventory of goods levied upon were prepared in Siegel's office and were all virtually identical. Notices were either mailed to the debtor or left in the debtor's mailbox, without entry into the debtor's home. Siegel claimed and collected fees for this service which was improperly performed, and the fees claimed and collected did not conform to the statutory fee bill. The various creditors did not ask that interest be added or collected, and never received more than the real debt. The creditor sometimes received less than the real debt even though it was actually collected in full.

Finally, by Magistrate Schwartz' own admission, he was Active Collection Agency until he became a magistrate. Thereafter, he stated, "We formed a corporation in that name immediately after I became a Magistrate." He also confirmed that his wife, Lillian Schwartz, retained the controlling interest in the corporation, although generally she did not perform any vital services for the business. The tenor of the statements made by Schwartz clearly indicates that, even after he became a magistrate, he regarded himself as being in the collection business. To make that even clearer, Schwartz said: "I handle all this business for one reason. If my wife makes money, I'm going to benefit by it because I have an opportunity to spend some of the money she makes, being the president of the company that employs the Constable who handles the work."

Appellants first argue that appeals Nos. 881, 882, 883 and 885 are not sufficient to charge an indictable common law crime. It is argued that the allegations

of "indirect" benefit, on their face, are not sufficient to constitute the required corrupt and criminal motive, nor otherwise aver an indictable common law crime.

What conduct may be punished under the common law is described in *Com. v. Evans*, 190 Pa. Superior Ct. 179, 154 A. 2d 57, affirmed 399 Pa. 387, cert. denied, 364 U.S. 899, rehearing denied, 364 U.S. 939. In that case this Court stated, at page 225: "Misbehavior in office is a common law offense. Com. v. Brownmiller, supra, 141 Pa. Superior Ct. 107, 120, 14 A. 2d 907. The offense occurs when there is a breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive. Com. v. Peoples, 345 Pa. 576, 579, 28 A. 2d 792; McNair's Petition, 324 Pa. 48, 55, 187 A. 498. Evans and Torrance here were charged with the performance of a discretionary act with an improper or corrupt motive. A discretionary duty must be exercised with reason as opposed to caprice or arbitrary action; the term discretion ' "imports the exercise of judgment, wisdom, and skill, as contradistinguished from unthinking folly, heady violence, and rash injustice." ' Com. v. Brownmiller, supra, 141 Pa. Superior Ct. 107, 120, 14 A. 2d 907, 913. In its penal sense misbehavior in office does not encompass mere errors in judgment or departures from sound discretion, but an official must perform those official duties which require the exercise of a sound discretion to the interest of the Commonwealth and not capriciously, arbitrarily, and with a willful and corrupt design. Com. v. Brownmiller, supra, 141 Pa. Superior Ct. 107, 120, 121, 14 A. 2d 907. The willful and corrupt motive need not arise from personal benefit. See Com. v. Brownmiller, supra, 141 Pa. Superior Ct. 107, 121, 122, 14 A. 2d 907."

In the recent case of *Com. v. McKarski*, 208 Pa. Superior Ct. 376, 381, 222 A. 2d 411, Judge JACOBS, for

this Court, reviewed a number of cases on this subject in the following language: "What is a common law offense? There are many statements, helpful and otherwise, in our cases on this subject.

"In Commonwealth v. McHale, 97 Pa. 397, 408 (1881), the Supreme Court said: 'The highest authority upon this point is Blackstone. In chap. 13, of vol. 4, of Sharswood's edition, it is thus defined: "The last species of offenses which especially affect the Commonwealth are those against the public police or economy. By the public police and economy I mean the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations." '

"In the same case, at p. 410, it was said: 'We are of opinion that all such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in the books, but whether they injuriously affect the public police and economy.'

"In Commonwealth v. Mochan, 177 Pa. Superior Ct. 454, 458, 110 A. 2d 788 (1955), this Court said: 'Any act is indictable at common law which from its nature scandalously affects the morals or health of the community.'

"In Commonwealth v. Miller, 94 Pa. Superior Ct. 499, 507 (1928), it was said: 'The common law is sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the state to interfere and punish the wrong doer, as in the case of acts which injuriously affect public morality, or obstruct, or pervert public justice, or the administration of government.'

"In Commonwealth v. Orris, 136 Pa. Superior Ct. 137, 146, 7 A. 2d 88 (1939), it was said: 'Among the offenses described as misdemeanors at common law are those less than felony, but such "trespasses against good morals" as tend "to outrage decency." '

"A consideration of the factual context of each of these cases is helpful in understanding the kind of conduct these broad statements were aimed at. In Commonwealth v. McHale, supra, the charge was procuring false counts and returns of votes at an election and depositing false election ballots. In Commonwealth v. Mochan, supra, the defendant made numerous telephone calls to a married woman, accusing her of being a lewd and immoral woman, and used disgusting and indecent language in his telephone talks. Commonwealth v. Miller, supra, involved a police officer indicted for malfeasance in office. In Commonwealth v. Orris, supra, there was an attempt to carnally know a twelve year old girl."

We are convinced that the language of Indictments Nos. 881-3 and 885 is sufficient to charge a common law crime. We are also convinced that Schwartz had a statutory duty not to sit in those cases. The Act of March 30, 1875, P. L. 35, as amended, 12 PS §111, provides in part that "Changes of venue shall be made in any civil cause, in law or in equity, depending in any of the courts of this Commonwealth, in the cases following; namely—First. Whenever the judge . . . shall be personally interested. . . .

"Third. Whenever any near relative of such judge shall be a party to any such cause, or interested in the event thereof. . . ."[1] These statutory provisions clearly show what the public policy is in this state. The law has always considered the relationship between

---

[1] The Canons of Judicial Ethics, adopted by the Supreme Court of Pennsylvania on February 14, 1965, also provide: "A judge should not act in a controversy where a near relative is a party."

spouses as a very close one. In fact, they are regarded as one person and not as separate entities, and the married women's acts have not changed this concept: *Alles v. Lyon,* 216 Pa. 604, 606, 66 A. 81. The relationship, unlike that of other persons, may not be entered into nor dissolved without the consent of the state. What affects one affects the other and we cannot conceive of a closer human relationship. We are further convinced that Schwartz had a corrupt motive for sitting in these cases. All litigants "are entitled to a hearing and determination by an impartial tribunal, and hence no judge should preside in a case in which he is not wholly free, disinterested, impartial, and independent." 20 P.L.E., Judges, §41; 48 C.J.S., Judges, §§72, 78 and 85. See also *Dunmore Borough Election,* 299 Pa. 517, 524, 149 A. 733; *McNair's Petition,* 324 Pa. 48, 54, 187 A. 498.

In the present case Schwartz tried to conceal his interest by setting up a corporation and making his wife the nominal owner. Certainly the jury could infer from this alone that he would indirectly receive a benefit. This was his corrupt motive.

In England a magistrate may be prosecuted if he sits in a case in which he has an interest: *King v. Davis,* Lofft 63.

It may be that there is no case in Pennsylvania exactly the same as this one, but, as was so well stated in *Com. v. Mochan,* 177 Pa. Superior Ct. 454, 457, 110 A. 2d 788, "The test is not whether precedents can be found in the books but whether the alleged crimes could have been prosecuted and the offenders punished under the common law." Furthermore, both defendants breached numerous statutes regulating their official actions. Constable Siegel failed to make proper service as required by 42 PS §422 and 12 PS §318, and failed to make proper returns of service as required by 12 PS §355. He also failed to perform the basic

duties in levies as required by 42 PS §233. And Magistrate Schwartz failed to take any steps to hold his active partner Siegel in check. He failed to perform his positive statutory duties as a judge.

It is also argued that the sole proof showing benefit to Magistrate Schwartz came from his own sworn deposition in which he frankly admitted that he received a benefit because he had an opportunity to spend some of the money which his wife, as president of Active Collection Agency, received. From all the other facts proved, the jury could and undoubtedly did infer that Schwartz received a benefit. This was a reasonable inference to be drawn under all the facts and circumstances surrounding them.

It is argued that Schwartz' statement should not have been admitted because he did not have counsel at the time it was taken and because he was not advised of his right to remain silent. Undoubtedly Magistrate Schwartz, who had presided in hundreds of criminal arraignments and hearings, knew that he had the right to counsel and the right to remain silent. Furthermore, Schwartz and 25 other magistrates were interviewed only after they had voluntarily agreed to discuss with the investigators the magisterial system of Philadelphia. Arrangements for these discussions were made through the chief magistrate and through the solicitor to the board of magistrates. He had not been coerced into making any statement and, on the contrary, he frankly admitted that the investigators had been "very, very fair." His argument that the statement was inadmissible because the alleged benefit, which is part of the corpus delicti in the crimes charged, was not established by separate and independent evidence, is without merit. If Magistrate Schwartz had sold or given his prior collection agency to an outsider rather than to his wife, there might be some substance to this argument. The jury, however, could

infer from the fact that he gave it to his wife that he was doing so in order to retain the benefit for himself. His admission of such benefit was not necessary to prove the corpus delicti in this case. Under all the circumstances the jury could and probably did infer that his statement was given by and with the consent of counsel, who, with the chief magistrate, arranged for the meeting.

As to Indictment No. 884, it is argued that Magistrate Schwartz could not be held accountable for the improper interest charges awarded and for the award of improper fees and expenses to the constable and for requiring proper returns of service of writs of execution, because these items were entered or performed by either the constable or the magistrate's clerk. The magistrate may not hide behind these associates. The statute expressly places the duty upon him to do these things or see that they are properly done by his associates.

It is also argued that the conspiracy bill, No. 880, was not proven by sufficient evidence and that there was a failure to produce clear and sufficient evidence as to the alleged conspiracy. The Penal Code, Act of June 24, 1939, P. L. 872, §302, 18 PS §4302, provides: "Any two or more persons who falsely and maliciously conspire and agree to cheat and defraud any person of his moneys, goods, chattels or other property, or do any other dishonest, malicious, or unlawful act to the prejudice of another, are guilty of conspiracy. . . ."

The conspiracy is the agreement, combination or common understanding, to do an unlawful act, or to do or commit a lawful act in an unlawful manner: *Com. v. Rosen,* 141 Pa. Superior Ct. 272, 14 A. 2d 833. The heart of the offense is the common understanding, no matter how it came into being: *Com. v. Yobbagy,* 410 Pa. 172, 188 A. 2d 750; *Com. v. Neff,* 407 Pa. 1, 179 A. 2d 630.

". . . evidence to sustain a charge of conspiracy must be 'such as reasonably and naturally justifies an inference of guilt of the accused and is of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt. . . . A conviction will not be allowed to stand if it is based solely upon suspicions and conjectures.'" *Com. v. Yobbagy,* 410 Pa. 172, 176, 177, 188 A. 2d 750; *Com. v. Evans,* 190 Pa. Superior Ct. 179, 201, 154 A. 2d 57.

At the same time, the acts and conduct of the defendants themselves, done in pursuance of the original scheme, may be considered as proof of the unlawful intent, and the conspiracy may be established by proof of the relation, conduct or circumstances of the parties: *Com. v. Smith,* 151 Pa. Superior Ct. 113, 116, 117, 30 A. 2d 339. Otherwise stated, where the conduct of the parties indicates that they were acting together with a common and corrupt purpose in view, the jury may properly infer that a conspiracy did exist: *Com. v. Albert,* 151 Pa. Superior Ct. 184, 30 A. 2d 184; *Com. v. Rosen,* 141 Pa. Superior Ct. 272, 14 A. 2d 833.

We conclude that the evidence was of such quality and quantity as to prove, beyond a reasonable doubt, that Magistrate Schwartz and Constable Siegel did conspire together to commit the subversion of judicial process charged. It is inconceivable that these two defendants could have operated as closely together as they did, virtually sharing the same office facilities, and with such identity of purpose and design, without there having been a common understanding or agreement existing between them: *Com. v. Cohen,* 203 Pa. Superior Ct. 34, 199 A. 2d 139, cert. denied, 375 U.S. 985. The connection between these two defendants was much more concretely demonstrated than was the case in *Com. v. Reginelli,* 208 Pa. Superior Ct. 344, 222 A. 2d 605, and *Com. v. Price,* 208 Pa. Superior Ct. 354, 222 A. 2d 610.

It is argued that the transfer of ownership of Active Collection Agency to the wife after his election as magistrate shows that Schwartz was acting in good faith to divest himself of any improper interest. If the sale had been to an outsider and not to his wife, this conclusion would undoubtedly follow. The transfer to the wife, however, negatives the idea of good faith and the jury could and probably did infer that this was done so that Schwartz could continue his interest in Active Collection Agency. No judge should be permitted to sit in cases in which he had such an interest and to do so was highly improper.

The evidence was sufficient to sustain the charges as to false pretences as against both defendants. The Commonwealth proved that the appellants, in legal documents issuing from their public offices, falsely pretended that they were entitled to receive certain arbitrary additions to the sums claimed by plaintiff creditors, fictitious interest, unlawful costs and excessive fees. The Commonwealth also proved that the defendants obtained money by these pretences and the mere fact that the amounts were not large is immaterial. The Commonwealth also proved that the debtors were defrauded and that the creditors were also defrauded because they did not receive the amounts paid as interest. While the indictments did not specifically charge that the creditors were cheated, the evidence was material and relevant to prove an intent to defraud the debtors because it showed that the interest was not turned over to the creditors, who would have been the only people entitled to receive it. The convictions for false pretences were adequately sustained by the evidence.

It is also argued that the court erred in excluding from the evidence an alleged custom as to the practices of the magistrates and constables to charge greater amounts for services than the amounts authorized by

statute. A custom or usage repugnant to the express provisions of a statute is void: *Com. v. Ellis,* 46 Pa. Superior Ct. 72, 78; *Allen v. Mack,* 345 Pa. 407, 412, 28 A. 2d 783; *Lanigan v. Lewis,* 210 Pa. Superior Ct. 273, 232 A. 2d 50. The case of *Com. v. Bollinger,* 197 Pa. Superior Ct. 492, 179 A. 2d 253, does not support appellants' argument because in that case the constable was charged with cheating from the county sums in payment for work which had been done, not by him but by his associates. This conduct was not regulated by statute and he was, therefore, permitted to show the custom. In the present case the charges were specifically fixed by statute.

Appellants also argue that the instructions concerning certain evidence which had been excluded were in error. The bills of indictment charging Magistrate Schwartz with conspiracy and malfeasance referred to the impropriety of the magistrate sitting in 28 specified cases which are listed in an attached schedule. In proving the illegality of the magistrate's acts in this respect, the Commonwealth presented detailed evidence as to six of those cases listed. In addition similar evidence was presented over defendants' objections as to nine cases not listed. The trial judge then refused to permit the Commonwealth to introduce evidence of other cases not listed in the indictment for the reason that such evidence would be prejudicial and repetitious. It is argued that the trial judge in his charge erroneously referred to these excluded cases and told the jury that they could consider them. In his argument to the jury counsel for Schwartz stated that the Commonwealth had only produced evidence as to a few of the many civil cases in Magistrate Schwartz' court. In his charge the trial judge reminded the jury that the Commonwealth had attempted the proof of other cases but he was careful to instruct the jury that they could consider these other cases only as they relate to the

alleged conspiracy and as they relate to the issue of design, plan or intent. This was not error: *Com. v. Cohen,* 203 Pa. Superior Ct. 34, 45, 70, 199 A. 2d 139; *Com. v. Raymond,* 412 Pa. 194, 194 A. 2d 150; *Com. v. Grosso,* 192 Pa. Superior Ct. 513, 162 A. 2d 421, affirmed 401 Pa. 549, cert. denied, 365 U.S. 835.

Appellants also argue that the trial court erred in permitting John P. Mason, Esq., the Commonwealth's chief witness, to sit at counsel table and act as associate prosecuting attorney. The record does not indicate that Mr. Mason was a prosecuting attorney in this case. Mr. Mason was merely a witness and he had a perfect right to sit at counsel table, as county detectives often do in the trial of a criminal case.

Appellants also argue that the trial court erred in its instructions to the jury as to reputation evidence in the case against Schwartz. The trial court expressly limited the reputation evidence to the case against Siegel. This was not error under the circumstances surrounding the trial. Schwartz presented no evidence in his defense and therefore gained the tactical advantage of the final speech to the jury. Siegel, however, presented reputation witnesses and the trial judge permitted these witnesses to testify also as to Schwartz' reputation on the theory that two such eminently respectable gentlemen would never conspire to commit a crime. The court charged the jury in this connection as follows: "This evidence was admitted for the limited purpose of establishing in the case against Siegel, that because neither he nor Schwartz were capable of having committed the crimes alleged—in other words, they were of good reputation—that he, Siegel, could not have committed the offense of conspiracy. . . . You may consider this reputation evidence respecting Schwartz, in the light of this principle." We find no error in this charge under the circumstances of this case.

The motion to sever the Siegel case from the Schwartz case was refused and this was within the sound discretion of the trial judge and we find no manifest abuse of discretion or prejudice or clear injustice to the defendant in this regard: *Com. v. Kubacki*, 208 Pa. Superior Ct. 523, 224 A. 2d 80; *Com. v. Patrick*, 416 Pa. 437, 206 A. 2d 295. To have granted separate trials would have entailed a repetition of the same testimony. All the charges grew out of the same occurrences. There was a close relationship between the substantive offenses and the conspiracy which justified a joint trial. In a conspiracy charge defendants should generally be tried together. See *Com. v. Giambrone*, 183 Pa. Superior Ct. 283, 130 A. 2d 254.

It is also argued that all of the indictments were illegal because the attorney general had no right to investigate the magisterial system of Philadelphia absent a formal request by the Board of Judges of the Common Pleas Courts of Philadelphia. We can see no error in this respect: *Com. ex rel. Minerd v. Margiotti*, 325 Pa. 17, 188 A. 524; *Margiotti Appeal*, 365 Pa. 330, 75 A. 2d 465; *Com. v. Fudeman*, 396 Pa. 236, 152 A. 2d 428; *Com. v. Wheeler*, 200 Pa. Superior Ct. 284, 189 A. 2d 291.

Judgments of sentence affirmed and the defendants are directed to appear in the court below at such time as they may be there called, and that they be by that court committed until they have complied with the sentences, or any part of them which had not been performed at the time the appeals were made a supersedeas.